**THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| ROEI AZAR, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No.: 1:19-cv-7665 |
| Plaintiff, | ) ) ) | Judge: Charles R. Norgle, Sr. Magistrate Judge: Jeffrey Cole |
| v. | ) ) ) |  |
| GRUBHUB INC., MATTHEW MALONEY and ADAM DEWITT, | ) ) ) |  |
| Defendants. | ) ) ) |  |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF HUGUES GERVAT
FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL**

Hugues Gervat ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)     appointing Movant as Lead Plaintiff for the Class of all purchasers of the publicly traded securities of Grubhub Inc. ("Grubhub" or the "Company") during the period from July 30, 2019 through October 28, 2019, inclusive (the "Class Period"); and

(b)     approving Movant's selection of The Rosen Law Firm P.A. as Lead Counsel for the Class, and the law firm of Wolf Haldenstein Adler Freeman & Herz LLC as Liaison Counsel for the Class.

**INTRODUCTION AND BACKGROUND**

This action was initiated on November 20, 2019. That same day, a PSLRA early notice advising class members of the pendency of the action and the deadline for class members to seek

1

lead plaintiff status was issued. *See* Declaration of Carl V. Malmstrom, filed herewith ("Malmstrom Decl."), Ex. 1.

Grubhub provides online and mobile delivery options for restaurant pick-up and delivery orders. The Company pioneered online delivery services and, for several years after its 2004 founding, enjoyed a dominant market position. The Company generates revenues primarily when diners place an order on its platform. Restaurants pay a commission on orders processed through the platform. A restaurant can choose to pay a higher rate, which affects its exposure to diners. Restaurants that use the Company's delivery services pay an additional commission on the transaction for the use of those services. The Company also recognizes as revenue any fees charged to the diner for delivery services it provides. Grubhub common stock trades on the New York Stock Exchange under the ticker symbol "GRUB."

The complaint alleges that throughout the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Grubhub was suffering from declining daily average grubs ("DAGs") on a sequential basis, despite the massive investments that Grubhub had made to spur demand; (2) Grubhub's new customer additions were generating significantly lower revenues as compared to historic cohorts and had a materially lower long-term value because such customers were more prone to using competitor platforms; (3) Grubhub's partnership-focused business plan had failed, and the Company needed to engage in the same aggressive non-partnered sales tactics embraced by its competitors to generate significant revenue growth; (4) Grubhub was not generating the high return on its recent strategic investments as represented to investors, and needed to expend tens of millions of dollars in additional capital in order to grow revenues and retain market share, eviscerating the Company's profitability; (5) Grubhub was tracking tens of millions of dollars below its 2019 revenue and

2

earnings guidance; and (6) as a result of the foregoing, Defendants' statements about the Company's business and operations lacked a reasonable basis.

On July 30, 2019, Grubhub issued a press release announcing its second quarter 2019 financial results. Among other positive news and narratives, Defendant DeWitt, highlighted the purportedly improving economics of the Company's diner base and the "profitability" of "smaller and less dense markets[.]"

That same day, Grubhub hosted an earnings call led by defendants Maloney and DeWitt, which featured both defendants discussing Grubhub's current and future business in many positive terms. Among these positive terms, defendant Maloney explained that Grubhub's growth in active diners and its restaurant network positioned Grubhub particularly well. Later on the call, in response to an analyst question regarding order growth and new diners, defendant DeWitt stated that the "trend hasn't changed" and diner economics were the same as the figures presented to investors in the prior quarter's supplemental disclosure slide deck.

During the call, defendant DeWitt also rejected the notion that "competitive intensity" had altered the Company's equation. Also during the call, defendant Maloney reaffirmed the Company's commitment to its partnership business model. Defendant DeWitt similarly stated that "we have a very profitable model in terms of long-term sustainability, the breadth of restaurants, the combination of how we charge diners and what the restaurants pay us and the formula works."

On August 6, 2019, Grubhub filed its second quarter report on Form 10-Q which stated that Grubhub had "experienced significant growth across all of its key business metrics, Active Diners, Daily Average Grubs and Gross Food Sales, during the three and six months ended June 30, 2019 as compared to the same periods in the prior year." It also stated that this growth "was

3

primarily attributable to increased product and brand awareness by diners largely as a result of marketing efforts and word-of-mouth referrals, better restaurant choices for diners in our markets and technology and product improvements."

Then, on October 28, 2019, Grubhub shocked the investing public when it issued a press release announcing its third quarter 2019 financial results which revealed that Grubhub had suffered a 6% decline in DAGs, a key customer demand metric, and the loss of a $100 million in gross food sales on a sequential basis despite adding nearly a million active diners during the quarter. The release also slashed revenue projections by approximately $70 million and earnings projections by approximately $60 million for the year.

That same day, defendant Maloney took the unusual step of releasing a Shareholder Letter which acknowledged the deep and troubling problems facing the Company. The letter stated that Grubhub's newest diner cohorts were exhibiting lower frequency and retention rates as compared to the Company's earlier cohorts, that the relatively easy industry growth levers had "played out" and that Grubhub had entered a period of significantly lower growth without any "easy wins." Defendant Maloney also stated that Grubhub had effectively abandoned its historic focus on restaurant partnerships and would seek to rapidly expand offerings for non-partnered restaurants.

On this news, Grubhub common stock declined more than 40%, to close at $33.11 per share on October 29, 2019, on unusually high trading volume, damaging investors.

**ARGUMENT**

I.       **MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Act. *See*, 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA directs courts to consider

4

any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movant satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the class and, therefore, should be appointed Lead Plaintiff.

### A.      <u>Movant's Motion is Timely</u>

On November 20, 2019, pursuant to Section 21D(a)(3)(A)(I) of the PSLRA, a notice announcing this securities class action, advising class members of the pendency of the action and of the deadline for class members to seek lead plaintiff status was issued.  *See* Malmstrom Decl., Ex. 1.

Movant files the instant motion and submits herewith his sworn certification attesting that he is willing to serve as representative of the Class and willing to provide testimony at deposition and trial, if necessary. *See* Malmstrom Decl., Ex. 2. Movant therefore satisfies the first PSLRA requirement that a putative lead plaintiff either file a complaint or make a motion in response to a published notice.

#### B. Movant Has The Largest Financial Interest in the Action

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax/Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period". *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

During the Class Period, Movant purchased a total of 60 shares of Grubhub securities and suffered losses of $1,453.82. *See* Malmstrom Decl., Ex. 3. Movant is not aware of any other individual or group that has suffered greater losses in Grubuhb securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

#### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

---

[1] *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Secs. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that the Movant satisfies the requirements of Rule 23 is sufficient. At the lead plaintiff stage, "[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in [Rule] 23(a)(3) and 23(a)(4), that is, typicality and adequacy." *Mayo v. Apropos Tech., Inc.,* No. 01 C 8406, 2002 WL 193393, at *3 (N.D. Ill. Feb. 7, 2002) (citing *Lax.*, 1997 WL 461036, at *6).

### 1. Movant's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See Mayo,* 2002 WL 193393 at *4; *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002) (citations omitted). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Mayo,* 2002 WL 193393 at *4.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the federal securities laws by disseminating false and misleading statements concerning the business, operations and financial prospects of Grubhub. Movant, like all of the members of the Class, purchased Grubhub securities at prices artificially inflated by Defendants' misrepresentations and omissions, and was

7

damaged thereby. Movant's interests are closely aligned with other Class members' interests. Movant's interests are, therefore, typical of the other members of the Class.

### 2. Movant is Adequate

The adequacy of representation requirement of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a movant's claims and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and has made this motion to be appointed lead plaintiff. Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class.

### D. <u>Movant Is Presumptively the Most Adequate Plaintiff</u>

The presumption in favor of appointing Movant as lead plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)      will not fairly and adequately protect the interests of the class; or
>
> (bb)      is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78 u-4(a)(3)(B)(iii)(II).

The presumption that Movant is the most adequate lead plaintiff is not, therefore, subject to rebuttal. Movant has suffered substantial financial losses and believes he has the largest financial interest in this case of any timely lead plaintiff movant. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses defendants could raise against him that would render Movant inadequate to represent

the Class. Accordingly, Movant is presumptively the most adequate plaintiff and should be appointed lead plaintiff for the Class. *See In re Cendant Corp.*, 264 F.3d at 268.

## II.   MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected The Rosen Law Firm P.A. as Lead Counsel and Wolf Haldenstein Adler Freeman & Herz LLC as Liaison Counsel. Both firms are experienced in the area of securities litigation and class actions and have successfully prosecuted securities litigations and securities fraud class actions on behalf of investors. *See* Malmstrom Decl., Exs. 4 & 5.

As a result of the firms' experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge that will enable these two law firms to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel and Liaison Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Movant respectfully requests the Court issue an Order: (i) appointing the Movant as Lead Plaintiff of the Class; (ii) approving The Rosen Law Firm P.A. as Lead Counsel and Wolf Haldenstein Adler Freeman & Herz LLC as Liaison Counsel for the Class; and (iii) granting such other relief as the Court may deem to be just and proper.

Dated: January 21, 2020                      Respectfully submitted,

                                             /s/Carl V. Malmstrom
                                             Carl V. Malmstrom

9

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
111 W. Jackson Street, Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (312) 214-3110
malmstrom@whafh.com

[Proposed] Liaison Counsel for Plaintiff

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
275 Madison Avenue, 34th Floor
New York, New York 10118
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

[Proposed] Lead Counsel for Plaintiff

10