IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROEI AZAR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GRUBHUB, INC., et al., <br><br> Defendants. | Case No. 1:19-cv-07665 <br><br> Hon. Charles R. Norgle |

## ORDER

Because Plaintiff's complaint is sufficient to survive Defendants' motion to dismiss, the motion [38] is denied.

## MEMORANDUM OPINION

Lead Plaintiff[1] brings this class action lawsuit for violations of the federal securities laws against Defendants Grubhub Inc. ("Grubhub"), Grubhub's Chief Executive Officer, Matthew Maloney ("Maloney"), and Grubhub's Chief Financial Officer, Adam DeWitt ("DeWitt"). Plaintiff asserts claims for violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934. Dkt. 36 ("Complaint"). Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is denied.

## I. BACKGROUND

Grubhub is an online food ordering and delivery company. In contrast to many of Grubhub's competitors, Grubhub originally followed an exclusively partnered business model,

---

[1] As the caption indicates, this action was initiated by Roei Azar. Dkt. 1. But later the Court granted City of Pontiac General Employees' Retirement System and City of Pontiac Police & Fire Retirement System's (the "Pontiac Retirement Systems") motion to be appointed as Lead Plaintiff under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, because of the Pontiac Retirement Systems' large financial interest in the outcome of this case. Dkt. 18; 21. The Pontiac Retirement Systems, as Lead Plaintiff, then filed the current Class Action Complaint. Dkt. 36.

which focused on entering into agreements with "partner" restaurants that paid a commission to have their menus listed on Grubhub's online platform. Complaint ¶ 3. This model was successful for many years, allowing Grubhub, an early mover in the industry, to hold a market share around 70% well into 2015. Id. ¶ 7.

However, competition began aggressively expanding to new markets in 2016, causing Grubhub's market share to decline. Complaint ¶ 7. Grubhub then sought to expand into new markets beyond the big cities where it had been operating, but it took Grubhub time to negotiate partnerships with individual restaurants in new markets. Grubhub's competitors, in contrast, employed a non-partnered model and so could add restaurant menus to their platforms quickly without the need to negotiate with restaurants. Id. ¶ 6. Grubhub initially stood by its partnered model as the only profitable and sustainable one in the industry. Still, Grubhub's market share fell below 50% in 2018. Id. ¶ 8. As a result, Grubhub decided to get more aggressive in expanding into new markets to combat the market share declines, in part by partnering with Yum! Brands and other national restaurant chains to provide a foothold in new markets from which Grubhub could then build out its restaurant inventory. Id. ¶¶ 50-52. In addition, Grubhub announced in October 2018 that it was drastically increasing its spending on marketing by millions of dollars, which it continued through the second quarter of 2019, to accelerate its expansion into approximately 200 new markets. Id. ¶¶ 9, 53-54, 56.

Grubhub and analysts used several metrics to evaluate Grubhub's business performance. Grubhub reported traditional metrics such as quarterly revenue, net income, and EBITDA[2] as well

---

[2] Adjusted Earnings Before Interest, Taxes, Depreciation, and Amortization.

2

as industry-centric metrics like gross food sales, daily average grubs ("DAGs"),[3] active diners,[4] and orders-per-active-diner.[5] Complaint ¶ 32. Grubhub and investors also tracked the "quality" or "loyalty" of the diners using its platform, which are terms used to describe the frequency with which diners returned to the Grubhub platform to make additional orders. If a diner ordered from Grubhub more frequently, that diner was considered to be more loyal and of higher quality. Grubhub evaluated diner quality using ordering behavior reports, which included whether diners ordered again within 7, 14, and 30 days. Id. ¶¶ 5, 33-34. According to Plaintiff, diner quality was driven by the quantity of restaurants offered on a platform, referred to as "restaurant density." Id. ¶¶ 6, 39.

Ultimately, on October 28, 2019, Grubhub issued a release that reported disappointing financial results in the third quarter of 2019 and reflected negative business trends. Grubhub disclosed that despite the continued addition of new diners and increased revenues, Grubhub's new-diner growth was largely attributed to the acquisition of low-quality diners. These diners did not order from Grubhub as frequently as previous Grubhub diner cohorts, and had a history of ordering on other platforms. Complaint ¶ 12. These less loyal diners resulted in little or no profit to Grubhub. Id. ¶ 9. New diners were lower quality in part due to Grubhub's lack of restaurant density. Id. ¶ 6.

In addition, Defendants released a shareholder letter (the "Shareholder Letter") on October 28, 2019, prior to an earnings call regarding the third quarter of 2019. In the Shareholder Letter, Defendants explained that the partnered model was impeding Grubhub's ability to achieve

---

[3] Daily Average Grubs is the number of orders placed on the Grubhub platform divided by the number of days in the quarter or year. DAGs is a primary metric that the company and analysts use to track and assess Grubhub's growth. Complaint ¶ 32(b).

[4] Active diners is the number of diners that had used the platform in the past twelve months. Complaint ¶ 32(c).

[5] Orders-per-active-diner is all orders in a quarter or year divided by active diners. Complaint ¶ 32(d).

restaurant density and to attract high-quality customers in the new markets. Defendants disclosed that they had decided to adopt the non-partnered strategy adopted by Grubhub's competitors, which they had previously criticized. Complaint ¶¶ 12, 83. Then, on a conference call before the market opened on October 29, 2019, Maloney and DeWitt disclosed that they had decided to shift to a non-partnered strategy "months" earlier. Id. ¶ 87.

Upon revealing this negative information to its shareholders, Grubhub reduced its full-year earnings guidance by more than 25%, from $242.5 million to $179.5 million, and indicated that it expected 2020 earnings of around $100 million, which was 70% below previous market expectations of $341 million. Complaint ¶ 12. After multiple analysts downgraded the company, Grubhub's stock price immediately declined by 43%, from $58 on October 28, 2019 to $33 on October 29, 2019, eliminating more than $2 billion in market capitalization. Id. ¶¶ 13-14, 91.

Plaintiff claims that Defendants made false and misleading statements that defrauded them into purchasing Grubhub stock at an inflated price. Plaintiff alleges that Defendants falsely and misleadingly purported on television and in press releases, conference calls, and Securities and Exchange Commission filings that Grubhub's marketing and expansion initiatives undertaken at the end of 2018 through the middle of 2019 were successful. Generally, these alleged false or misleading representations involved the quality of new diners, Grubhub's restaurant density, and the viability, superiority, and continued success of Grubhub's partnered business model.

Specifically, Plaintiff identifies twenty-six allegedly false and misleading statements to support its claims. Dkt. 41-1 (Plaintiff's chart of "False and Misleading Statements Cited in [the complaint]"). According to Plaintiff, by the time the Class Period began on April 25, 2019, Grubhub was more than six months into its strategy of increased marketing and had been monitoring performance metrics like the frequency of orders from new diners. Therefore, says

4

Plaintiff, Grubhub knew about negative trends but made false or misleading statements that concealed those trends and assured investors that Grubhub's efforts were succeeding. Complaint ¶ 64; Dkt. 41-1. Some of these statements were allegedly misleading because they omitted information, including (1) that new diners were lower-quality, less-profitable, and were not ordering on Grubhub at the same frequency as diners in the past, complaint ¶ 67(a), (2) that lack of restaurant density in new markets was hurting profitability, id. ¶ 67(b), and (3) that the partnered model was failing, id. ¶ 75. Plaintiff asserts that because of Defendants' false and misleading statements, Grubhub's stock price was artificially inflated, Plaintiff was defrauded into purchasing stock at the inflated price, and Plaintiff suffered damages when the truth ultimately came to light and the stock price plummeted.

## II. STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6). Dkt. 38; 39. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-557 (2007). Under Rule 12(b)(6), the complaint "must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above a speculative level.'" Doe v. Village of Arlington Heights, 782 F.3d 911, 914 (7th Cir. 2015) (quoting Twombly, 550 U.S. at 555, 570). The statement must provide sufficient plausible facts to put a defendant on notice of the claims against him. Brooks v. Ross, 578 F. 3d 574, 581 (7th Cir. 2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

5

Id. (citations and quotation marks omitted). In reviewing a plaintiff's claim, the court "must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011). However, legal conclusions and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Toulon v. Continental Cas. Co., 877 F.3d 725, 734 (7th Cir. 2017) (quoting Iqbal, 556 U.S. at 678).

## III. ANALYSIS

The elements of Plaintiff's claim under § 10(b) of the Securities Exchange Act are: (1) a material misrepresentation or omission; (2) scienter (deceptive intent); (3) a connection with the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation. Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).[6] Defendants argue that Plaintiff has failed to plead that Defendants violated § 10(a) of the Securities Exchange Act for two reasons: (1) Plaintiff fails to sufficiently plead that Defendants made any false or misleading statement, i.e., fail to plead falsity; and (2) Plaintiff fails to sufficiently plead scienter—that Defendants made any alleged false or misleading statements with deceptive intent. For the following reasons, the Court finds that Plaintiff's complaint sufficiently pleads each of those elements and, accordingly, denies Defendants' motion.

### A. Falsity

A securities fraud claim is subject to the "heightened pleading requirement" of Federal Rule of Civil Procedure 9(b), which "requires that allegations of fraud be stated 'with particularity'

---

[6] Plaintiff's claim against Maloney and DeWitt for "control person" liability under § 20(a) requires a primary violation of § 10(b) as well as allegations that each individual defendant exercised general control over the primary violator's operations and "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." Harrison v. Dean Witter Reynolds, Inc., 974 F.2d 873, 881 (7th Cir. 1992). But Defendants seek dismissal of Plaintiff's control person liability claim under § 20(a) only for Plaintiff's purported failure to sufficiently plead a primary violation of § 10(b). Dkt. 39 at 15 n.9.

. . . meaning 'the who, what, when, where, and how[.]'" Fryman v. Atlas Fin. Holdings, Inc., 462 F. Supp. 3d 888, 896 (N.D. Ill. 2020) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)). In addition, under the Private Securities Litigation Reform Act, Plaintiff must "(1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading, and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Fryman, 462 F. Supp. 3d at 896 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007)). Contrary to Defendants' assertion, Plaintiff satisfies that burden.

The complaint need only allege that a statement was misleading, not that it was false. Statements, "even if literally true, could still be misleading to investors depending on the context and manner of their presentation." Ross v. Career Educ. Corp., No. 12 C 276, 2012 WL 5363431, at *6 (N.D. Ill. Oct. 30, 2012). "At this stage, this Court need not determine whether [Defendants'] statements were in fact misleading, rather this Court need only determine that plaintiff has alleged sufficient facts showing the circumstances which plaintiffs claim constitute fraud." City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc., No. 10 C 6016, 2012 WL 607578, at *3 (N.D. Ill. Jan. 23, 2012). The falsity element is met if Plaintiff plausibly alleges any false or misleading statement by each defendant. Ross, 2012 WL 5363431, at *8.

Defendants argue that the statements and omissions identified by the complaint were neither false nor misleading at the time they were made. Defendants assert that Plaintiff relies on an impermissible theory of "fraud by hindsight," seeking to impose liability on Grubhub simply because certain statements by Grubhub's leadership happened to turn out wrong in the long run. See, e.g., City of Livonia Employees' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co., 711 F.3d 754, 758 (7th Cir. 2013) ("There is no securities fraud by hindsight."); Susie Ong v. Chipotle Mexican

7

Grill, Inc., No. 16 CIV. 141 (KPF), 2017 WL 933108, at *11 (S.D.N.Y. Mar. 8, 2017) ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them. Thus, allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.") (cleaned up); Dileo v. Ernst & Young, 901 F.2d 624, 628 (7th Cir. 1990). At the same time, "[f]raud is almost always detected after the fact, typically based on evidence developed subsequent to the allegedly fraudulent statements. Courts must of course be careful to distinguish between forward-looking statements later deemed to be unduly optimistic, and statements of historical fact later shown to be *false* when made." In re MannKind Sec. Actions, 835 F. Supp. 2d 797, 809 (C.D. Cal. 2011) (emphasis in original).

The Court disagrees with Defendants and finds that Plaintiff has sufficiently pleaded falsity. Plaintiff pleads with particularity, identifying the challenged statements, the date the statements were made, where the statements were made, and the person who made the statements. Plaintiff further alleges how the statements were false or misleading. Plaintiff alleges that Defendants knew about Grubhub's inability to attract high-quality diners, and that Defendants made misleading statements and omissions in an effort to conceal from investors that Grubhub's expansion was failing in this regard. Defendants argue that they could not have known until months after making the statements that the "diners' performance would continue to decline over the long run." Dkt. 39 at 7. But according to Plaintiff, Grubhub made repeated representations that the quality of new diners was in fact high. See Complaint ¶¶ 66(d) (regarding Q1 2019 results, Maloney stated that "we've been able to acquire high-quality new diners in . . . newer markets"); Id. ¶ 74(f) (regarding Q2 2019 results, DeWitt claimed that "diners in [new] markets are behaving a lot like diners do in other markets"). Plaintiff bolsters its allegations that Defendants knew that

8

new diners were low quality by asserting that Defendants were able to closely monitor diner behavior on a 7-, 14-, and 30-day basis and that such data provided predictability of diner trends. Complaint ¶¶ 101-107. Plaintiff also alleges that Defendants made false or misleading statements regarding restaurant density and profitability. Specifically, Plaintiff states that Defendants referred to Grubhub's "broad and deep restaurant network" and attributed Grubhub's growth "primarily . . . to . . . better restaurant choices." Id. ¶¶ 66(d), 69, 78. According to Plaintiff, Grubhub had actually failed to build adequate restaurant density in new markets. Finally, Plaintiff alleges that Defendants falsely and misleadingly stated that the partnered model continued to be successful, when it was actually negatively impacting restaurant density and profitability. At this stage of litigation, all inferences must be drawn in Plaintiff's favor, and as such the Court cannot conclude that this is an instance of "fraud by hindsight." Carpenters Pension Tr. Fund for N. California v. Allstate Corp., No. 16 C 10510, 2018 WL 1071442, at *6 (N.D. Ill. Feb. 27, 2018) (Allstate executive's post-class statement "suggests that [his assurances] were incorrect when made" and not merely "incorrect in retrospect").

Defendants also argue that certain challenged statements were subjective opinions about Grubhub's business model, and that those statements are not actionable. However, the Court finds that the complaint sufficiently challenges statements that make factual representations, including about diner quality and restaurant density. See, e.g., ¶ 66(d) ("we've been able to acquire high-quality new diners"); ¶ 74(c) ("ever-improving restaurant network"). Carpenters Pension Tr. Fund for N. California v. Allstate Corp., No. 16 C 10510, 2018 WL 1071442, at *4 (N.D. Ill. Feb. 27, 2018) ("many of defendants' alleged statements . . . cannot be read to suggest that defendants' conclusions were uncertain or mere opinions"). In this context, a statement regarding diner quality could reasonably be interpreted as a factual claim about how frequently new customers were

9

ordering via the Grubhub platform. <u>Hill v. State St. Corp.</u>, No. 09CV12146-NG, 2011 WL 3420439, at \*23 (D. Mass. Aug. 3, 2011) ("given the context in which Defendants used the phrase 'high quality,' it is entirely plausible that the public would reasonably understand the statement to be a factual declaration").[7]

### B. Scienter

Defendants next argue that Plaintiff fails to adequately plead scienter because the allegations do not support any inference that Defendants acted recklessly or with intent to defraud. The Court disagrees. Taken together, the circumstantial facts pleaded by Plaintiff give rise to a strong inference that Defendants recklessly disregarded a substantial risk that the statements they made were false.

The Private Securities Litigation Reform Act requires Plaintiff to plead Defendants' deceptive intent with particularity by alleging "facts giving rise to a strong inference" that Defendants acted with the required state of mind. 15 U.S.C. § 78u-4(b)(2)(A). "That 'required state of mind' is an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." <u>Higginbotham v. Baxter Intern., Inc.</u>, 495 F.3d 753, 756 (7th Cir. 2007). Under that standard, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 314 (2007). The Court "must consider the complaint in its entirety" and ask "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any

---

[7] Defendants also argue that four statements were "immaterial puffery." Dkt. 39 at 27-28, 33. But the "materiality determination is rarely appropriate at the summary judgment stage, let alone on a motion to dismiss," and the Court will not now decide that issue. <u>In re Akorn, Inc. Sec. Litig.</u>, 240 F. Supp. 3d 802, 815 (N.D. Ill. 2017) (quoting <u>Marks v. CDW Computer Ctrs., Inc.</u>, 122 F.3d 363, 370 (7th Cir. 1997)).

individual allegation, scrutinized in isolation, meets that standard." Id. at 322 (emphasis in original).

The totality of Plaintiff's allegations supports a strong inference that Defendants knew about negative financial trends and spoke with an intent to deceive. Plaintiff's response highlights seven sets of allegations which, taken together, support scienter. Dkt. 41 at 11-14. First, new diner quality was low in the nine months before the challenged statements. Grubhub closely analyzed these diners on 7- to 30-day increments, and therefore had the ability to monitor diner quality and analyze trends. Maloney later stated that it was "logical" that new diners would be "less valuable" given Grubhub's lack of restaurant density, Complaint ¶ 88. Carpenters Pension Tr. Fund for N. California v. Allstate Corp., No. 16 C 10510, 2018 WL 1071442, at *6 (N.D. Ill. Feb. 27, 2018) (finding scienter where defendant analyzed claim frequency during the class period and later admitted that increased frequency was "expected"). Second, Grubhub never achieved adequate restaurant density in new markets. Even by the end of the Class Period, then, Grubhub had not attracted high-quality diners, so it could not have been acquiring "high-quality" diners during the Class Period like executives stated. Third, before the challenged statements were made, Grubhub added non-partnered restaurants and refinanced its debt to do so. Given that Defendants had criticized the non-partnered business model previously, this decision supports that Grubhub was aware of negative financial trends. Fourth, Maloney and DeWitt controlled all aspects of the company, had access to proprietary company information, were directly involved in Grubhub's expansion, and made numerous statements regarding diner quality. City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc., No. 10 C 6016, 2012 WL 607578, at *4 (N.D. Ill. Jan. 23, 2012) (a reasonable person could infer deliberate recklessness by corporate officer defendants based in part on their positions, access to non-public information, and control of company statements).

11

Fifth, diner quality and restaurant density were critical to Grubhub and investors, and officers "can be assumed to know of facts critical to a business's core operations[.]" Jones v. Corus Bankshares, Inc., 701 F. Supp. 2d 1014, 1028 (N.D. Ill. 2010). Sixth, the negative trends that were ultimately disclosed in the Shareholder Letter were so severe that Grubhub became unprofitable and reversed its long-standing business model; "[t]he more serious the error, the less believable are defendants['] protests . . . and the stronger is the inference that defendants must have known about the discrepancy." Rehm v. Eagle Fin. Corp., 954 F. Supp. 1246, 1256 (N.D. Ill. 1997). Seventh, Defendants had motive to inflate Grubhub's stock, including so that they could more cheaply acquire companies and increase payout to Defendants upon an acquisition. Complaint ¶¶ 120-130.

Defendants argue that none of Plaintiff's allegations raises any inference of scienter, and that the most cogent and compelling inference to draw from the Complaint is that Grubhub and its executives sincerely believed that their strategic investments would pay off. Defendants argue that Grubhub's strategic investment was showing positive initial returns and did not suffer negative trends at the time of the challenged statements, but the Court must construe all of Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor.

Defendants attack other of Plaintiff's allegations in isolation, but the Court considers the complaint in its entirety. Defendants are correct that certain of these alleged facts, pleaded alone, would likely not sufficiently plead scienter. In re Bally Total Fitness Sec. Litig., No. 04 C 3530, 2006 WL 3714708, at *9 (N.D. Ill. July 12, 2006) ("Motives that are generally possessed by most corporate directors and officers do not suffice."); Fryman v. Atlas Fin. Holdings, Inc., 462 F. Supp. 3d 888, 902 (N.D. Ill. 2020) (allegation that Defendants "had access to information that undermined the veracity" of their statements failed to plead scienter because plaintiffs "do not state with particularity the information to which Defendants had access"); In re MCI Worldcom, Inc.

Sec. Litig., 191 F. Supp. 2d 778, 793 (S.D. Miss. 2002) ("allegations regarding the public bond offerings of WorldCom [to refinance existing corporate debt] do not contribute to a strong inference of scienter."). But "defendants cannot defeat a complaint by 'cherry picking' particular allegations that, standing alone, might not meet the heightened pleading standard under Rule 9(b) or the PSLRA." Norfolk Cty. Ret. Sys. v. Ustian, No. 07C7014, 2009 WL 2386156, at *11 (N.D. Ill. July 28, 2009); see Institutional Invs. Grp. v. Avaya, Inc., 564 F.3d 242, 273 (3d Cir. 2009) (rejecting Defendants' argument that "The sum of several zeros . . . is still zero" because "inference is not arithmetic. The inferential significance of any single allegation can be determined only by reference to all other allegations."). Accordingly, the Court finds that Plaintiff's inference of deceptive intent is cogent and at least as compelling as Defendants' opposing inference.

## IV. CONCLUSION

Dismissals on the pleadings "should be granted sparingly and with caution to make certain that the plaintiff is not improperly denied a right to have his claim adjudicated on the merits." Boim v. Am. Muslims for Palestine, No. 20-3233, 2021 WL 3616070, at *11 (7th Cir. Aug. 16, 2021). Plaintiff has sufficiently pleaded with particularity that Defendants made material misrepresentations and omissions and that Defendants acted recklessly or with deceptive intent. Plaintiff's claims are plausible and Defendants' motion to dismiss [38] is denied. These issues may be revisited after discovery on a motion for summary judgment or at trial.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: September 7, 2020

13