UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| ROEI AZAR, Individually and on Behalf of All Others Similarly Situated, | ) ) | Case No.  1:19-cv-07665 |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| | ) | Judge Matthew F. Kennelly |
| vs. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| GRUBHUB INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION**

4869-6401-4911.v2

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  SUMMARY OF THE LITIGATION .................................................................3

III. LEAD PLAINTIFF HAS PROVIDED NOTICE IN COMPLIANCE WITH
     RULE 23 AND DUE PROCESS........................................................................4

IV.  ARGUMENT.......................................................................................................5

     A.   The Proposed Settlement Warrants Final Approval ................................5

          1.   Lead Plaintiff and Lead Counsel Adequately Represented the Class..........6

          2.   The Settlement Resulted from Extensive Arm's-Length
               Negotiations ....................................................................................7

          3.   The Settlement Provides a Favorable Benefit to the Class
               Considering the Costs, Risks, and Delay of Trial and Appeal.....................8

               a.   Risks to Establishing Liability ...........................................8

               b.   Risks Related to Proving Loss Causation and Damages .................9

          4.   The Settlement Is Fair and Adequate Under the Remaining
               Rule 23(e)(2) Factors ....................................................................12

               a.   The Method for Distributing Relief Is Effective............................12

               b.   Counsel's Fees Are Reasonable.......................................................12

               c.   Settlement-Related Agreements.......................................................13

               d.   The Settlement Treats Class Members Equitably..........................13

          5.   The Endorsement of Lead Counsel and the Reaction of the Class
               Favor Approval ..............................................................................13

     B.   The Plan of Allocation Warrants Final Approval ..................................14

     C.   Class Certification Remains Warranted...............................................15

V.   CONCLUSION..................................................................................................15

- i -

4869-6401-4911.v2

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Career Educ. Corp. Sec. Litig.*,
2008 WL 8666579 (N.D. Ill. June 26, 2008) ................................................................8

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) ......................................................................................12

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ......................................................................................11

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ....................................................................................11

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) .........................................................................................5

*Macovski v. Groupon, Inc.*,
2022 WL 17256387 (N.D. Ill. Oct. 28, 2022) .............................................................15

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .........................................................10, 14

*Reynolds v. Ben. Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ......................................................................................11

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................................10, 14

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ................................................................................ *passim*

**Statutes**

15 U.S.C.
§78j(b)..........................................................................................................................3
§78t(a)...........................................................................................................................3
§78u-4(a)(4) ...........................................................................................................2, 6, 8

4869-6401-4911.v2

**Page**

Federal Rules of Civil Procedure
    Rule 23 ....................................................................................................................4, 5, 14
    Rule 23(a).......................................................................................................................15
    Rule 23(b)(3)..................................................................................................................15
    Rule 23(c)(2)(B)..............................................................................................................5
    Rule 23(e)(2) ........................................................................................................ *passim*
    Rule 23(e)(2)(A) ..........................................................................................................6, 7
    Rule 23(e)(2)(A)-(D) ........................................................................................................5
    Rule 23(e)(2)(B)...............................................................................................................7
    Rule 23(e)(2)(C)...............................................................................................................8
    Rule 23(e)(2)(C)(ii)-(iv)..................................................................................................12
    Rule 23(e)(2)(D) .............................................................................................................12
    Rule 23(e)(3)...................................................................................................................12

Janeen McIntosh and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*
    (NERA Economic Consulting Jan. 25, 2022)...........................................................................11

4869-6401-4911.v2

## I.     INTRODUCTION

Lead Plaintiff City of Pontiac Reestablished General Employees' Retirement System and City of Pontiac Police & Fire Retirement System ("Lead Plaintiff" or the "Pension Funds") respectfully submits this memorandum in support of its motion for final approval of the Settlement of the claims in this Litigation against Defendants Grubhub, Inc. ("Grubhub" or the "Company"), Matthew Maloney, and Adam DeWitt (collectively, "Defendants").[1]   The $42 million all-cash settlement is the result of Lead Plaintiff's and Lead Counsel's diligent efforts in litigating this matter and the parties' arm's-length settlement negotiations with the assistance of an experienced and well-respected mediator, Robert A. Meyer of JAMS.   Lead Plaintiff and Lead Counsel believe the Settlement is a highly-favorable result for the Class and therefore merits approval.

This case has been vigorously litigated from its commencement, as Defendants have maintained throughout that Lead Plaintiff could not adequately plead or prove the claims asserted. Lead Counsel expended substantial effort in reaching the Settlement, including, having: conducted a thorough investigation that included analysis of SEC filings, media, analyst reports, press releases, shareholder communications, relevant case law and authorities, and other publicly-available information; prepared the detailed, 159-paragraph Complaint; prepared an extensive brief in opposition to Defendants' motion to dismiss (which Judge Norgle denied in full); conducted significant written discovery served on Defendants and more than 30 non-parties, resulting in the production of over two million pages of documents; obtained and worked with a market efficiency expert and defended that expert's deposition in connection with Lead Plaintiff's motion for class certification; defended two Lead Plaintiff representative depositions; prepared for mediation,

---

[1]   Capitalized terms used herein that are not otherwise defined shall have the meanings provided in the Stipulation of Settlement dated October 7, 2022 (ECF 94) (the "Stipulation").   Citations are omitted and emphasis is added throughout unless otherwise noted.

4869-6401-4911.v2

including consultation with a market efficiency and damages expert and the exchange of briefs detailing the parties' respective positions; and participated in two mediation sessions before Mr. Meyer. *See* Declaration of James E. Barz in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Barz Decl."), ¶5, submitted herewith.

The $42 million Settlement provides the Class with a certain and substantial recovery without the risk, delay, and expense of continued litigation. Lead Counsel, who is well-respected and has substantial experience in prosecuting securities class actions, has concluded that the Settlement is a very good result for the Class. This conclusion is based on its diligent prosecution of the Litigation and all the circumstances present here, as well as the substantial risks, expenses, and uncertainties of continued litigation, the relative strengths and weaknesses of the claims and defenses, the legal and factual issues presented, the likelihood of obtaining a larger judgment against Defendants after trial, and past experience in litigating similar actions. Even if Lead Plaintiff was successful at trial and on post-trial appeals, any recovery remained uncertain and would have been years down the road. Lead Plaintiff, who has a significant stake in the Litigation, also believes that the Settlement is in the best interest of the Class. *See* accompanying Declaration of Sheldon Albritton in Support of Lead Plaintiff's Motion for Final Approval of Settlement ("Albritton Decl."), ¶7; Declaration of Matthew Nye in Support of Lead Plaintiff's Motion for Final Approval of Settlement ("Nye Decl."), ¶7.

For all the reasons discussed herein and in the concurrently-filed declarations, Lead Plaintiff respectfully submits that the Settlement is a very good recovery for the Class and should be approved by the Court. Likewise, the Plan of Allocation, which was developed by Lead Counsel and its damages expert based on an assessment of the damages theories asserted in the Litigation, is fair, reasonable, and adequate, and also should be approved by the Court.

- 2 -

4869-6401-4911.v2

## II.   SUMMARY OF THE LITIGATION

On July 24, 2020, Lead Plaintiff filed the operative Complaint for Violations of the Federal Securities Laws ("Complaint").  ECF 36.  Lead Plaintiff alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934, claiming that Defendants made false and misleading statements that allegedly concealed from investors that, in expanding into new territories, Grubhub was failing to build adequate restaurant density necessary to attract high-quality and profitable diners, the Company was attracting lower-quality and less-profitable diners, and the Company's business strategy and enterprise customer contracts were hurting profitability.  The Complaint alleges that the false and misleading statements and omissions artificially inflated Grubhub's stock price and when the truth was eventually disclosed, the price of Grubhub stock declined, resulting in substantial damages to the Class.  On November 11, 2020, Defendants moved to dismiss.  ECF 39.  Lead Plaintiff persuasively rebutted each of the Defendants' arguments in its opposition brief.  ECF 41.  On September 7, 2021, Judge Norgle denied the motion in full.  ECF 45.

Following the Court's September 7 Order, Lead Counsel drafted comprehensive written discovery, including document requests, interrogatories, and requests for admission to Defendants, and subpoenas to more than 30 non-parties.  Defendants and certain non-parties produced more than 275,000 documents, exceeding two million pages.  *See* Barz Decl., ¶¶5(c), (d).  In addition, Lead Plaintiff, working with Lead Counsel, responded to interrogatories, produced documents, submitted affidavits, and sat for depositions.  *See id.*, ¶5(e).  Lead Counsel retained a market efficiency expert, Chad W. Coffman (CFA), in connection with Lead Plaintiff's motion for class certification, which Defendants opposed and was pending at the time the parties reached a settlement.  *See id.*, ¶5(f).  Mr. Coffman and two of Lead Plaintiff's investment advisors were also deposed.  *See id.*, ¶5(g).

On April 6, 2022, in an effort to conserve judicial resources and pursue a fair and efficient resolution, the parties participated in a full-day mediation session with an experienced mediator,

- 3 -

Robert A. Meyer of JAMS. Prior to that mediation, Lead Plaintiff and Defendants prepared and exchanged materials detailing their positions on liability and damages. The initial mediation ended with the parties too far apart to reach an agreement, and the Litigation continued. The parties participated in another mediation session with Mr. Meyer on August 23, 2022, which again ended without reaching an agreement. Thereafter, the parties continued to engage in settlement discussions through Mr. Meyer, and, on September 9, 2022, Mr. Meyer issued a "mediator's proposal" to settle the action for $42 million. The parties then negotiated the Stipulation and supporting exhibits, and executed them on October 7, 2022. ECF 94. This Court preliminarily approved the Settlement on October 14, 2022 (the "Preliminary Approval Order"). ECF 99.

## III. LEAD PLAINTIFF HAS PROVIDED NOTICE IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

In granting preliminary approval of the Settlement, the Court approved the form and content of the Notice, Proof of Claim, and Summary Notice as well as Lead Plaintiff's proposed plan for the distribution and mailing of the Notice, which included all the information required by Rule 23 and the PSLRA. *See* ECF 99, ¶6. As detailed in the accompanying declaration of the Claims Administrator, Gilardi & Co. LLC, as of December 6, 2022, more than 70,600 copies of the Notice have been mailed to potential Class Members, brokers, and nominees. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, dated December 6, 2022, ¶11 ("Gilardi Decl."), submitted herewith. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire* on November 11, 2022. *Id.*, ¶12. The Claims Administrator has also established a dedicated Settlement website, www.GrubhubSecuritiesLitigation.com, to provide potential Class Members with information concerning the Settlement and access to copies of the Notice and other important documents. *Id.*, ¶14. This combination of individual notice by first-class mail to Class Members who could be

- 4 -

4869-6401-4911.v2

identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on internet websites, constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## IV.      ARGUMENT

### A.      The Proposed Settlement Warrants Final Approval

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Under Rule 23, as amended in 2018, a district court may approve of a class action settlement upon finding "that it is fair, reasonable, and adequate" after considering whether: (1) the class representatives and counsel adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account, among other things, the costs, risks, and delay of trial and appeal; and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). Prior to the Rule 23 amendment, the Seventh Circuit provided the following factors for district courts to consider:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).[2]

Given the $42 million all-cash recovery obtained, the risks faced, and the extensive arm's-length negotiations and efforts of Lead Plaintiff and Lead Counsel that led to the agreement, the Settlement satisfies each of the Rule 23(e)(2) and *Accretive* factors.

---

[2]     The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the four factors provided in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."

4869-6401-4911.v2

### 1. Lead Plaintiff and Lead Counsel Adequately Represented the Class

Rule 23(e)(2) advises district courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

As detailed herein, in the Barz and Lead Plaintiff declarations, and in the Memorandum of Points and Authorities in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum"), both Lead Plaintiff and Lead Counsel have adequately represented the Class by diligently prosecuting this Litigation and securing the favorable Settlement, through, for example:

- Lead Counsel's extensive investigation in connection with preparing Lead Plaintiff's detailed, 159-paragraph Complaint (*see* Barz Decl., ¶¶5(a), (b));

- full briefing on Defendants' motion to dismiss, followed by the Court's September 7, 2021 order denying the motion in full (*see id.*, ¶5(b));

- substantial written and document discovery resulting in the production by Defendants and non-parties of over two million pages of documents which Lead Counsel has reviewed and analyzed (*see id.*, ¶5(c));

- retention of a market efficiency and damages expert, Mr. Coffman, in connection with class certification (*see id.*, ¶5(f));

- briefing on Lead Plaintiff's motion for class certification and defending the depositions of Mr. Coffman and two Lead Plaintiff representatives (*see id.*, ¶¶5(f)-(g)); and

- preparation for and attending two mediations, including the exchange of mediation briefs detailing the parties' respective positions on liability and damages and settlement demands (*see id.*, ¶¶5(i)-(j)).

Further, in actively overseeing and participating in this Litigation, each Lead Plaintiff, working with Lead Counsel, responded to interrogatories, produced documents, submitted affidavits in support of class certification, and prepared for and sat for a deposition. Barz Decl., ¶5(e). Lead Plaintiff also retained highly-experienced and well-respected counsel, who not only zealously prosecuted the Litigation from investigation through negotiations, but who were able to secure a very

- 6 -

4869-6401-4911.v2

favorable settlement. *See* Barz Decl., ¶¶5, 17-23. This diligent and adequate representation of the Class supports final approval. *See* Fed. R. Civ. P. 23(e)(2)(A).

### 2. The Settlement Resulted from Extensive Arm's-Length Negotiations

Rule 23(e)(2) next advises district courts to consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).

Here, the Settling Parties reached the Settlement only after protracted, arm's-length negotiations between experienced counsel, including two mediation sessions with Mr. Meyer, an experienced mediator. *See* Barz Decl., ¶¶5(h)-(j), 6, 10. At the time of the April 6, 2022 and August 23, 2022 mediations based on their diligent representation, as just discussed, Lead Plaintiff and Lead Counsel had achieved a substantial litigation victory early in the case, were well into discovery, had fully briefed Lead Plaintiff's class certification motion, and were therefore well-informed of the strengths and weaknesses of the claims.

The mediations involved the further exchange of the parties' respective views on Lead Plaintiff's claims, Defendants' defenses, potentially available insurance coverage, and issues related to damages. The negotiations were hard-fought, as reflected by the motion to dismiss briefing, class certification briefing, and the length of negotiations. *See id.*, ¶6. The parties participated in two thorough mediation sessions and additional discussions with Mr. Meyer over the course of four months, but the sessions ended without agreement. *Id.*, ¶¶5(i)-(j). The parties were only able to reach an agreement after continued negotiations and the issuance of a "mediator's proposal" by Mr. Meyer to settle the litigation for $42 million. *See id.*, ¶6. This contentious, well-informed, arm's-length negotiation process supports final approval. *See Accretive*, 773 F.3d at 864 (affirming approval of securities class action settlement before a ruling on the motion to dismiss where "[t]he settlement was reached through extensive arm's-length negotiations with an experienced third-party

- 7 -

mediator"); *In re Career Educ. Corp. Sec. Litig.*, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (Lefkow, J.) (approving settlement that "resulted from arms-length negotiations and voluntary mediation between experienced counsel").

### 3. The Settlement Provides a Favorable Benefit to the Class Considering the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2) next advises district courts to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). The Seventh Circuit has likewise instructed courts to consider: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; and (2) the complexity, length, and expense of further litigation. *See Accretive*, 773 F.3d at 863-64. The $42 million cash recovery obtained for the benefit of the Class provides highly-favorable relief considering the legal, factual, and practical risks of continued litigation against the Defendants. And, the "stage of the proceedings and the amount of discovery completed" weighs in favor of approval as Lead Plaintiff had prevailed on the motion to dismiss after extensive briefing, conducted a substantial amount of discovery (including review and analysis of more than two million pages of documents), and filed Lead Plaintiff's motion and supporting papers for class certification at the time of settlement. *See* Barz Decl., ¶5. The parties had also conducted class-related discovery as Lead Counsel defended the depositions of Mr. Coffman and two representatives of Lead Plaintiff, and Defendants further deposed two of Lead Plaintiff's investment advisors. *See id.*, ¶5(g).

### a. Risks to Establishing Liability

While Lead Plaintiff believes that it had assembled a strong case against Defendants for liability, including a favorable ruling on the motion to dismiss, a finding in favor of the class at trial was never assured. Lead Plaintiff would need to prove to the satisfaction of the Court and jury that

- 8 -

Defendants made false and misleading statements, with scienter, that were material to a reasonable investor. Defendants have adamantly denied liability. *See* ECF 39 (Defendants' motion to dismiss).

Defendants, for instance, argued that Lead Plaintiff's alleged misstatements regarding the adequacy of its restaurant density and ability to attract high-quality and profitable diners were not actionable. According to Defendants, "[b]ecause there was nothing false or misleading about the challenged statements at the time they were made, there was no duty to disclose anything further . . . ." *See* ECF 39 at 8. Defendants also argued that their statements about the strength of Grubhub's business were non-actionable statements of opinion that were sincerely held and that Defendants' statements about Grubhub's business model were merely statements of corporate optimism, *i.e.*, immaterial puffery. *See id.* at 9-11.

Defendants further maintained that Lead Plaintiff could not establish scienter, arguing, for example, that the Complaint lacked particularized allegations that any individual defendant had possession of confidential information that would render his statements knowingly false or misleading when made. *See id.* at 12-13. Defendants also argued that Lead Plaintiff's circumstantial allegations, such as motive to conceal negative trends, failed to establish a strong inference of scienter. *See id.* at 12. Although Judge Norgle denied Defendants' motion to dismiss, Defendants no doubt would continue to assert these and other arguments at summary judgment and trial.

### b. Risks Related to Proving Loss Causation and Damages

Even if Lead Plaintiff established liability, it faced further risks and uncertainty regarding proof of loss causation and damages. Defendants likely would have argued on summary judgment that Lead Plaintiff could not establish loss causation with respect to the alleged corrective disclosure of the alleged fraud. In fact, Defendants likely would retain experts to opine that certain (if not all) of the alleged losses did not correlate to damages attributable to the alleged misstatements, which could reduce or even eliminate recoverable damages. *See, e.g.*, ECF 48 at 75 (Defendants claiming

- 9 -

that "the purported misrepresentations and omissions alleged in the Complaint did not affect the market price of Grubhub stock" and Plaintiff "cannot prove" damages); ECF 82 at 21 (arguing that Lead Plaintiff's expert failed to consider the extent to which confounding (non-fraud) information negatively impacted Grubhub's stock price). Although Lead Plaintiff would retain experts to opine in support of Lead Plaintiff's causation and damages theories, there is no guarantee that this "battle of the experts" would result in a favorable outcome for the Class.

As set forth above, with conflicting arguments and evidence, there is no certainty that Lead Plaintiff would prevail on summary judgment, at trial, or on appeal with respect to liability or damages. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.) ("Securities fraud litigation is long, complex and uncertain."). Moreover, the likely "complexity, length, and expense of further litigation" would have been substantial, which weighs in favor of settling the claims. *Accretive*, 773 F.3d at 863. For example, to prove its claims against Defendants, Lead Plaintiff would obtain and fully review and analyze additional documents from Defendants and non-parties. Defendants in turn would likely continue seeking documents from Lead Plaintiff, and both sides could take numerous additional depositions. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("'The costs associated with discovery in complex class actions can be significant.'"). As discussed, each side could then retain experts, resulting in a "battle of the experts," which is a costly, uncertain, and difficult-to-predict endeavor. *See Accretive*, 773 F.3d at 863 (noting that calculating damages in a securities class action would have "resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class – exactly the type of litigation the parties were hoping to avoid by

- 10 -

settling"). Even if Lead Plaintiff was able to win on every issue, the entire litigation process could span several years, with costs of defense reducing available insurance.[3] *See* Barz Decl., ¶8.

In contrast, the $42 million settlement, at this juncture, results in a certain and favorable recovery. Based on preliminary damage estimates derived during the course of the Litigation, Lead Counsel believes that if Lead Plaintiff prevailed on liability for the entire Class Period and assuming a 100% claims rate, the Settlement represents approximately 7% of the maximum recoverable damages estimated by Lead Plaintiff's expert, but in considering potential arguments that could have been advanced concerning damages, the Settlement could also reflect as much as 50% of recoverable damages. This range is multiples above the median recovery of 1.8% in securities class actions in 2021. Ex. A (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, NERA Economic Consulting (Jan. 25, 2022)), at 24, Fig. 22.

In short, the $42 million settlement is a highly-favorable result, and it was accomplished without the considerable risk, expense, and delay of further fact and expert discovery, summary judgment motions, and trial and post-trial litigation. *See Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now."); *Accretive*, 773 F.3d at 864 (affirming approval of $14 million settlement where the defendant "was prepared to vigorously contest the lawsuit, having raised potentially valid defenses[,] [defendant]'s motion to dismiss was fully briefed and argued before the district court[,] [f]urther litigation almost certainly would have involved complex and lengthy discovery and expert testimony[, and] [i]nsurance proceeds to fund a settlement or judgment were a limited, wasting asset, *i.e.*, further defense costs would have reduced those funds"). This factor strongly supports final approval.

---

[3]    Even a meritorious case can be lost at trial. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor). And even trial victory may not end the litigation. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (ordering new trial 13 years after case was commenced).

4869-6401-4911.v2

> **4.  The Settlement Is Fair and Adequate Under the Remaining Rule 23(e)(2) Factors**

Rule 23(e)(2) also advises district courts to consider: (i) "the effectiveness of any proposed method of distributing relief to the class"; (ii) "the terms of any proposed award of attorney's fees, including timing of payment"; (iii) "any agreement required to be identified under Rule 23(e)(3)"; and (iv) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). Each of these factors further weighs in favor of final approval.

> **a.  The Method for Distributing Relief Is Effective**

As explained in §III above and §IV.B. below, the methods used in the notice and claims administration process are effective and they provide Class Members with the necessary information to receive their *pro rata* share of the Settlement. *See* Gilardi Decl., Ex. A (Notice at 4-7). The claims process provides for straightforward cash payments based on the trading information provided, and it provides claimants with an opportunity to cure any deficiencies or request review by the Court of any denial of their claims. *Id.*; Stipulation, ¶6.7. This method for distributing relief in securities class actions is well-established and effective. *See infra*, §IV.B.

> **b.  Counsel's Fees Are Reasonable**

As detailed in the Fee Memorandum, the proposed attorneys' fees of 30% of the Settlement Amount plus litigation expenses and charges, are reasonable in light of the efforts of Lead Counsel, the contingent nature of its representation, and the risks in the Litigation. Since this is not a "claims made" settlement, the entire Net Settlement Fund will be distributed to Class Members until it is no longer economically feasible, so there is no risk that counsel will be paid but Class Members will not. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 726-27 (7th Cir. 2014) (rejecting settlement where attorneys would receive fees based on inflated settlement value, as defendants were likely to pay only a fraction of the purported settlement value to the class).

- 12 -

### c. Settlement-Related Agreements

In addition to the Stipulation, the Settling Parties entered into a confidential Supplemental Agreement that establishes the conditions under which Defendants would be able to terminate the Settlement based on whether requests for exclusion from the Class reach a specified threshold. *See* Stipulation, ¶8.4. This type of agreement is standard in securities class actions. *See, e.g.*, *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Stipulation of Settlement, ECF 274-1 at ¶8.3 (N.D. Ill. June 19, 2019) (Dow, J.). Lead Plaintiff and Defendants have no other agreements with each other.

### d. The Settlement Treats Class Members Equitably

Under the Plan of Allocation, eligible claimants will receive their *pro rata* share of the recovery based on, among other things, the number of shares purchased, when the shares were purchased, and whether they were sold or held. Gilardi Decl., Ex. A (Notice at 4-7). Lead Plaintiff will receive the same type of *pro rata* recovery (based on its Recognized Claim as calculated under the Plan of Allocation) as all other similarly situated Grubhub share purchasers. Thus, the Settlement treats Class Members equitably.

### 5. The Endorsement of Lead Counsel and the Reaction of the Class Favor Approval

In addition to the Rule 23(e)(2) factors, the Seventh Circuit has noted that the "opinion of competent counsel," the "amount of opposition to the settlement," and "the reaction of members of the class to the settlement" are also relevant considerations. *See Accretive*, 773 F.3d at 863.

Here, the settled claims have been litigated and settled by experienced and competent counsel on both sides of the case. Lead Counsel is well known for its many years of experience and success in complex class action litigation. *See* Barz Decl., ¶¶21-23; http://rgrdlaw.com. Based on its extensive experience and expertise, Lead Counsel has determined that the Settlement is in the best interest of the Class after weighing the substantial benefits of the Settlement against the numerous

4869-6401-4911.v2

obstacles to a better recovery after continued litigation. *See* Barz Decl., ¶11. This endorsement favors final approval. *See Schulte*, 805 F. Supp. 2d at 586-87 (holding opinion of counsel with "extensive experience" that the settlement was beneficial to the class and met the requirements of Rule 23 "supports [the court's] approval of the Settlement").

Moreover, as discussed in §III above, the Claims Administrator has sent notice to tens of thousands of potential Class Members in accordance with the Preliminary Approval Order. While the deadline for the Class Members to exclude themselves or object is December 22, 2022, to date no objections and no requests for exclusion have been received.[4] Gilardi Decl., ¶16. The Lead Plaintiff Pension Funds are Class Members with significant losses who participated in and oversaw the Litigation, and they endorse the Settlement. *See* Albritton Decl., ¶¶5, 7; Nye Decl., ¶¶5, 7. This favorable reaction by the Class also supports final approval.

Thus, each Rule 23(e)(2) and *Accretive* factor is satisfied. Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, and requests that the Court grant final approval.

### B. The Plan of Allocation Warrants Final Approval

Lead Plaintiff also seeks approval of the Plan of Allocation, which is set forth in full in the Notice. *See* Gilardi Decl., Ex. A. Assessment of a plan of allocation under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See Retsky*, 2001 WL 1568856, at *3. Here, the Plan of Allocation was developed by Lead Counsel in conjunction with its damages expert and is an equitable method of distributing the Net Settlement Fund to Authorized Claimants. The Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that an Authorized Claimant's Recognized Loss

---

[4] Of course, the mere existence of objections or requests for exclusion does not preclude approval of the agreement. *Accretive*, 773 F.3d 859 (affirming settlement approval over objection); *Schulte*, 805 F. Supp. 2d 560 (approving settlement over 10 objections); *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Order, ECF 297 (N.D. Ill. Oct. 22, 2019) (Dow, J.) (approving settlement with 10 requests for exclusion). Lead Plaintiff will file reply papers on January 5, 2023 that will address any requests for exclusion or objections received.

- 14 -

Amount bears to the total Recognized Loss Amount of all Authorized Claimants. *See* Gilardi Decl., Ex. A (Notice at 4-7). Calculation of an Authorized Claimant's Recognized Loss Amount will depend upon several factors, including when the shares were held, purchased, or sold. *See id.* This method of distributing settlement funds is fair, reasonable, and adequate. *See, e.g.*, *Macovski v. Groupon, Inc.*, No. 1:20-cv-02581, Notice, ECF 110-1 (N.D. Ill. June 27, 2022) (setting forth similar plan of allocation); *Macovski v. Groupon, Inc.*, 2022 WL 17256387 (N.D. Ill. Oct. 28, 2022) (Kennelly, J.) (approving plan of allocation).[5]

### C. Class Certification Remains Warranted

The Court previously, for settlement purposes only, preliminarily approved this Litigation as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. ECF 99, ¶¶4-5. None of the facts regarding certification of the Class have changed since Lead Plaintiff submitted its motion for preliminary approval, and there has been no objection to certification. Accordingly, Lead Plaintiff respectfully requests that the Court grant final certification of the Class and appoint Lead Plaintiff as class representative and Lead Counsel as class counsel, for settlement purposes only, pursuant to Rules 23(a) and (b)(3).

## V. CONCLUSION

For the reasons stated in this memorandum, in the accompanying declarations, and in the Fee Memorandum, Lead Plaintiff respectfully requests that the Court approve the Settlement and the Plan of Allocation as fair, reasonable, and adequate, and certify the Class.

---

[5] *See also Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Notice, ECF 274-1 (N.D. Ill. June 19, 2019) (setting forth similar plan of allocation); *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, Order, ECF 296 (N.D. Ill. Oct. 22, 2019) (Dow, J.) (approving plan of allocation).

DATED:  December 8, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)


*s/ James E. Barz*
JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT J. ROBBINS
BAILIE L. HEIKKINEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
bheikkinen@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
BRIAN E. COCHRAN (IL Bar # 6329016)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com
bcochran@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 16 -

4869-6401-4911.v2

ASHERKELLY
CYNTHIA J. BILLINGS-DUNN
MATTHEW HENZI
25800 Northwestern Highway, Suite 1100
Southfield, MI 48075
Telephone: 248/746-2710
248/747-2809 (fax)
cbdunn@asherkellylaw.com
mhenzi@asherkellylaw.com

Additional Counsel for Lead Plaintiff

- 17 -

4869-6401-4911.v2