UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| ROEI AZAR, Individually and on Behalf of All Others Similarly Situated, | ) ) | Case No.  1:19-cv-07665 |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| | ) | Judge Matthew F. Kennelly |
| vs. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| GRUBHUB INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)

4853-3716-1791.v1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ......................................................................................................1

II. AWARD OF ATTORNEYS' FEES...........................................................................3

    A. A Reasonable Percentage of the Fund Recovered Is the Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases...........................3

    B. The Requested Fee Is Reasonable and Appropriate ...............................................5

        1. The 30% Attorneys' Fee Request Is Consistent with Fees Awarded in this District.................................................................................................6

        2. Lead Counsel Provided Quality Legal Services that Produced Excellent Benefits for the Class...................................................................8

        3. The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent Nature of the Representation ........................................9

        4. The Stakes of the Litigation Favor a 30% Fee Award...............................11

        5. The Reaction of the Class Supports the Requested Award........................12

        6. Lead Plaintiff Approved the 30% Fee Request..........................................12

III. LEAD COUNSEL'S EXPENSES ARE REASONABLE................................................13

IV. AWARDS TO LEAD PLAINTIFF PURSUANT TO THE PSLRA ................................14

V. CONCLUSION..........................................................................................................15

4853-3716-1791.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abbott v. Lockheed Martin Corp.*,
   2015 WL 4398475 (S.D. Ill. July 17, 2015) ...........................................................................13

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
   2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) .............................................................................4

*Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*,
   No. 1:12-cv-03297, slip op. (N.D. Ill. July 22, 2015).............................................................14

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
   2014 WL 12767763 (N.D. Ill. Aug. 5, 2014) .............................................................6, 10, 15

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
   2014 WL 4950173 (N.D. Ill. July 8, 2014)..............................................................................14

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) .....................................................................................................4

*George v. Kraft Foods Global, Inc.*,
   2012 WL 13089487 (N.D. Ill. June 26, 2012)..........................................................................14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) .....................................................................................................9

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) .................................................................................................11

*In re Akorn, Inc. Sec. Litig.*,
   2018 WL 2688877 (N.D. Ill. June 5, 2018)..............................................................................15

*In re Alstom SA Sec. Litig.*,
   741 F. Supp. 2d 469 (S.D.N.Y. 2010)......................................................................................11

*In re Broiler Chicken Antitrust Litig.*,
   2022 WL 6124787 (N.D. Ill. Oct. 7, 2022)............................................................................6, 7

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) .............................................................................................13, 14

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ......................................................................................4, 7

*In re JDS Uniphase Corp. Sec. Litig.*,
   2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .........................................................................11

4853-3716-1791.v1

**Page**

*In re Spiegel, Inc. Sec. Litig.*,
No. 1:02-cv-08946, slip op. (N.D. Ill. Mar. 2, 2007)...............................................................6

*In re Sw. Airlines Voucher Litig.*,
799 F.3d 701 (7th Cir. 2015) .....................................................................................................7

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ..........................................................................................3, 11, 13

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005).......................................................................................11

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ..............................................................................................3, 5, 6

*Lowry v. RTI Surgical Holdings, Inc.*,
No. 1:20-cv-01939, slip op. (N.D. Ill. Jan. 26, 2022) ...............................................................7

*Macovski v. Groupon, Inc.*,
2022 WL 17256417 (N.D. Ill. Oct. 28, 2022).................................................................. *passim*

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806 (E.D. Wis. 2009)........................................................................................5

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) .....................................................................................................7

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ................................................................................................11

*Ronge v. Camping World Holdings, Inc.*,
No. 1:18-cv-07030, slip op. (N.D. Ill. Aug. 5, 2020) ..........................................................6, 14

*Rubinstein v. Gonzalez*,
No. 1:14-cv-09465, slip op. (N.D. Ill. Oct. 22, 2019)................................................................7

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ...........................................................................6, 10, 12

*Silverman v. Motorola, Inc.*,
2012 WL 1597388 (N.D. Ill. May 7, 2012),
*aff'd*, 739 F.3d 956 (7th Cir. 2013)..................................................................................4, 8, 14

*Silverman v. Motorola, Inc.*,
739 F.3d 956 (7th Cir. 2013) ........................................................................................ *passim*

4853-3716-1791.v1

**Page**

*St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.*,
   No. 1:16-cv-07145, slip op. (N.D. Ill. May 19, 2020),
   *rev'd on other grounds*, 35 F.4th 555 (7th Cir. 2022) .....................................................7, 8, 14

*St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.*,
   35 F.4th 555 (7th Cir. 2022)…………………………………………………………..7

*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007) ...................................................................................3, 11

*Taubenfeld v. Aon Corp.*,
   415 F.3d 597 (7th Cir. 2005) ...................................................................................6, 8, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).......................................................................................................5

*Trustees v. Greenough*,
   105 U.S. 527 (1881).......................................................................................................3

*Will v. Gen. Dynamics Corp.*,
   2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ...............................................................3

*Williams v. Rohm & Haas Pension Plan*,
   658 F.3d 629 (7th Cir. 2011) .........................................................................................4

*Wolff v. Cash 4 Titles*,
   2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ..........................................................3, 5

*Wong v. Accretive Health, Inc.*,
   2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) ...........................................................6, 14

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) .........................................................................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(3)(B)...........................................................................................................13
   §78u-4(a)(4) ...............................................................................................2, 9, 14, 15

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
   *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*
   (NERA Economic Consulting Jan. 25, 2022)..............................................................8

4853-3716-1791.v1

## I.   INTRODUCTION

Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), has obtained a substantial Settlement[1] consisting of $42 million, plus interest earned thereon.  For the reasons set forth herein and in the accompanying Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), the Settlement is a very favorable result.  It was achieved through Lead Counsel's vigorous litigation of this matter and the skill and effective advocacy of Lead Counsel.  As compensation for its efforts in achieving this result, Lead Counsel seeks an award of attorneys' fees of 30% of the $42 million fund, plus expenses/charges ("expenses") incurred in the prosecution of the Litigation in the amount of $228,889.82, plus interest at the same rate and for the same period as that earned by the Settlement Fund.  As detailed in §II.B.1. below, the 30% fee request, approved by Lead Plaintiff, is consistent with the fees often awarded in comparable securities class action settlements.

The 30% fee requested is warranted in light of the contingent nature of counsel's representation, the efforts of counsel in obtaining this favorable result, and the risks faced in the prosecution and settlement of the Litigation.  Absent the Settlement, and assuming Lead Plaintiff prevailed on Defendants' anticipated motion for summary judgment, the claims against Defendants could have continued for many years through trial and likely appeals.  As a result of Lead Counsel's diligent prosecution of this Litigation, a favorable settlement was achieved that provides Class Members with a substantial cash benefit now, rather than a potential recovery after several years of continued litigation, and eliminates the possibility of no recovery at all or of the costs of litigation

---

[1]   All capitalized terms not otherwise defined herein have the meanings ascribed in the Stipulation of Settlement dated October 7, 2022, ECF 94 (the "Stipulation").  Citations are omitted and emphasis is added unless otherwise noted.

- 1 -

diminishing the recovery. The significant settlement is reflective of counsel's experience, reputation, and skill in prosecuting securities class actions.

Lead Counsel undertook representation of the Class on a contingent fee basis and no payment has been made to date for its services or the litigation expenses it has incurred on behalf of the Class. Faced with complex issues, and opposed by experienced defense counsel, Lead Counsel nevertheless achieved a substantial litigation victory early in the case, as Defendants' motion to dismiss was denied in full, conducted extensive discovery, and succeeded in securing a favorable result for the Class. Lead Counsel believes its reputation as a leader in this field, its diligent efforts, and its dedication to the interests of the Class substantially contributed to obtaining the Settlement. The requested fee is within the range of percentages normally awarded in securities class actions in this Circuit and District, and is the appropriate method of compensating counsel. In addition, Lead Plaintiff was actively involved in the Litigation and has approved the requested fee. *See* accompanying Declaration of Sheldon Albritton in Support of Lead Plaintiff's Motion for Final Approval of Settlement ("Albritton Decl."), ¶8; Declaration of Matthew Nye in Support of Lead Plaintiff's Motion for Final Approval of Settlement ("Nye Decl."), ¶8.

Separately, Lead Plaintiff seeks awards of $1,000 each for the City of Pontiac Reestablished General Employees' Retirement System ("Retirement System") and the City of Pontiac Police & Fire Retirement System ("Police & Fire"), pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class. Lead Plaintiff supports its application with declarations setting forth the basis for the awards, which are substantially lower than awards in recent cases. Lead Plaintiff respectfully requests that the Court approve the requested awards.

For all the reasons set forth herein and in the accompanying declarations, Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable and should be awarded by the Court.

- 2 -

4853-3716-1791.v1

## II. AWARD OF ATTORNEYS' FEES

### A. A Reasonable Percentage of the Fund Recovered Is the Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases

For its efforts in creating a common fund for the benefit of the Class, Lead Counsel seeks as attorneys' fees a reasonable percentage of the fund recovered for the Class. Both the Supreme Court and the Seventh Circuit have long recognized that attorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services from the settlement fund. Under this "equitable" or "common fund" doctrine established more than a century ago in *Trustees v. Greenough*, 105 U.S. 527, 528 (1881), attorneys who create a common fund for a class are entitled to an award of fees and expenses from that fund as compensation for their work. *See Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007).

The "lodestar" method (multiplying reasonable hours by reasonable rates) to assess attorneys' fees is an additional method for assessing an appropriate fee award, and is often used in fee-shifting cases or cases involving statutory fee awards. While it can be used in securities class actions as a cross-check on fee awards, courts have recognized it can create perverse incentives that reward inefficient staffing of cases, discourage early settlement talks, cause unnecessary delay in resolving disputes, and thereby increase the burden on the judicial system. *See, e.g.*, *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) (stating the lodestar approach creates the "incentive to run up the billable hours"); *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) (noting in civil rights fee-shifting case the challenge of judicial review of attorney time because the "judge cannot readily see what legal work was reasonably necessary at the time" and that rewarding lawyers for hours billed can create a "conflict of interests").[2]

---

[2] *See also, e.g.*, *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) ("'Where

- 3 -

Thus, "[i]n a common fund class action settlement, the Seventh Circuit Court of Appeals uses a percentage of the relief obtained rather than a lodestar or other basis." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *3, *5 (S.D. Ind. Sept. 4, 2019) (noting that while district courts have discretion on the appropriate method for a given case, "the use of a lodestar cross-check is no longer recommended in the Seventh Circuit"); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 637 (7th Cir. 2011) (rejecting objector's appeal and declining to "disturb the district court's assessment of fees" on a percentage-of-the-fund basis); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (stating that "[w]hen a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund" and affirming award).

Consistent with this case law, judges in this District routinely award a reasonable percentage-of-the-fund as fees without any regard to lodestar. *See, e.g.*, *Macovski v. Groupon, Inc.*, 2022 WL 17256417, at *1 (N.D. Ill. Oct. 28, 2022) (Kennelly, J.) (fees awarded as a percentage of the settlement fund); *Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (St. Eve, J.) (stating it was unnecessary to consider lodestar and citing cases), *aff'd*, 739 F.3d 956 (7th Cir. 2013) (affirming percentage award without any discussion of lodestar); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844, 849 (N.D. Ill. 2015) (Dow, J.) (finding that the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district" and stating "the Court sees no utility in considering" counsel's submitted lodestar).

Accordingly, Lead Counsel requests attorneys' fees of 30% of the Settlement Amount.

---

success is a condition precedent to compensation, "hours of time expended" is a nebulous, highly variable standard, of limited significance. One thousand plodding hours may be far less productive than one imaginative, brilliant hour.'").

- 4 -

4853-3716-1791.v1

**B.     The Requested Fee Is Reasonable and Appropriate**

The Supreme Court has emphasized that private securities actions provide a "'most effective weapon in the enforcement' of securities laws and are 'a necessary supplement to [SEC] action.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007). It is well documented in publicly-available media that large defense firms representing corporations attract talented lawyers with very high compensation, and fee awards should serve to attract equally talented lawyers to take on the risks of contingent fee representation of plaintiffs in class action cases. *See, e.g.*, *Silverman v. Motorola, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (approving fee award and noting that "[t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel"); *Wolff*, 2012 WL 5290155, at *5 ("Mindful of the need to attract counsel of this high caliber, courts have recognized the importance of providing incentives to experienced counsel who take on complex litigation cases on a contingent fee basis so those cases can be prosecuted both efficiently and effectively.").

The percentage-of-the-fund method is intended to mirror the private marketplace for negotiated contingent fee arrangements. *See Kirchoff*, 786 F.2d at 324 ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'"); *see also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009) (stating "[t]he 'percentage of the fee' method is preferable" to the lodestar method "because it more closely replicates the contingency fee market rate for counsel's legal services").

Here, the requested 30% fee appropriately compensates Lead Counsel for the quality of services provided and the risks of obtaining no compensation at all. To date, no Class Member has objected to the fee, and it was approved by Lead Plaintiff. Lead Counsel respectfully requests that the 30% fee be approved.

4853-3716-1791.v1

### 1. The 30% Attorneys' Fee Request Is Consistent with Fees Awarded in this District

The Seventh Circuit has held that, in deciding common fund cases, district courts should "'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *Silverman*, 739 F.3d at 957, 958 (holding that attorneys' fees should "approximate the market rate" and that "[c]ontingent fees compensate lawyers for the risk of nonpayment"). Had this case been litigated on an individual rather than class basis, the customary fee arrangement would be in the range of one-third to 40% of the recovery. *See Kirchoff*, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled before trial). Moreover, courts in this District have recognized that in common fund cases, "an award of 33.3% of the settlement fund is within the reasonable range." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (Dow, J.); *see In re Broiler Chicken Antitrust Litig.*, 2022 WL 6124787, at *4 (N.D. Ill. Oct. 7, 2022) (Durkin, J.) (awarding 33% noting that "in large cases like this, the only available evidence of the 'market rate' is past awards").

The percentage sought here, 30% of the $42 million Settlement Amount, is consistent with percentages awarded to Robbins Geller in other securities class action cases in this District. *See, e.g.*, *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2014 WL 12767763, at *1 (N.D. Ill. Aug. 5, 2014) (St. Eve, J.) (awarding Robbins Geller and co-counsel 30% on $60 million settlement); *Wong v. Accretive Health, Inc.*, 2014 WL 7717579, at *1 (N.D. Ill. Apr. 30, 2014) (Coleman, J.) (awarding Robbins Geller and co-counsel 30% on $14 million settlement).[3]

---

[3] *See also Ronge v. Camping World Holdings, Inc.*, No. 1:18-cv-07030, slip op. at ¶4 (N.D. Ill. Aug. 5, 2020) (Pallmeyer, J.) (awarding 30% of $12.5 million); *In re Spiegel, Inc. Sec. Litig.*, No. 1:02-cv-08946, slip

- 6 -

The 30% fee request is also consistent with fee percentages often awarded in this District to other law firms in securities and other complex class actions. *See, e.g.*, *Groupon*, 2022 WL 17256417, at *1-*2 (awarding 33-1/3% of $13.5 million securities settlement, which "is consistent with the market rate in similarly complex actions litigat[ed] on a wholly contingent basis"); *Broiler Chicken*, 2022 WL 6124787, at *3 (awarding 33% on $181 million antitrust settlement, net of expenses, rejecting "declining fee scale award structures"); *Lowry v. RTI Surgical Holdings, Inc.*, No. 1:20-cv-01939, slip op. at ¶18 (N.D. Ill. Jan. 26, 2022) (Kennelly, J.) (awarding 30% fee of $10.5 million securities settlement); *Rubinstein v. Gonzalez*, No. 1:14-cv-09465, slip op. at ¶1 (N.D. Ill. Oct. 22, 2019) (Dow, J.) (awarding 30% of $16.75 million securities settlement); *Dairy Farmers of Am.*, 80 F. Supp. 3d at 862 (awarding 33% of $46 million antitrust settlement).[4] Thus, Lead Counsel's request for 30% of the total recovery is fair and reasonable and consistent with the "market rate" based on prior fee awards in this District.[5]

---

op. at ¶3 (N.D. Ill. Mar. 2, 2007) (Pallmeyer, J.) (awarding 30% of $17.5 million). Attached hereto as Exhibit A is an appendix of unreported authorities cited herein.

[4] The securities class action cases cited all awarded fees based on a percentage of the gross settlement amount. Recently, a court held that, under *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014), expenses and notice and administration costs should be deducted from the gross settlement amount and the fee awarded as a percentage of the remainder. *See, e.g.*, *St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.*, No. 1:16-cv-07145, slip op. at 4 (N.D. Ill. May 19, 2020) (Wood, J.), *rev'd on other grounds*, 35 F.4th 555, 559 n.1 (7th Cir. 2022) (noting that district court's decision to deduct costs before awarding percentage fee was "not at issue on appeal"). But *Redman* was a consumer case involving a coupon settlement, and the Seventh Circuit has repeatedly noted concerns regarding assessing the actual recovery in coupon settlements because such cases can have a low claims rate and might provide for any unclaimed funds to revert back to the defendants. *See Redman*, 768 F.3d at 629-37; *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015). In contrast, the Seventh Circuit affirmed a percentage fee award in a securities class action based on the aggregate settlement, without any discussion of the need to deduct such expenses. *See Silverman*, 739 F.3d 956 (affirming fee award of 27.5% of $200 million settlement); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) (affirming final approval of settlement and noting that district court "awarded attorneys' fees of 30% of the [$14 million] settlement proceeds, or $4.2 million").

[5] The Seventh Circuit recently remanded a 27.5% fee award in a securities class action. *St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.*, 35 F.4th 555, 568 (7th Cir. 2022). However, that case involved a settlement that was obtained prior to a ruling on a motion to dismiss, that followed large settlements with the government and consumers that "substantially reduced the risk of non-payment" in the securities action, and that involved a Lead Plaintiff that had apparently negotiated a lower fee scale agreement at the outset. *Id.*

- 7 -

### 2. Lead Counsel Provided Quality Legal Services that Produced Excellent Benefits for the Class

In evaluating counsel's fee request, courts may consider the "quality of legal services rendered." *Taubenfeld*, 415 F.3d at 600; *see also Silverman*, 2012 WL 1597388, at *3 (noting that "[t]he representation that Class Counsel provided to the class was significant, both in terms of quality and quantity"). From the outset, Lead Counsel sought to obtain the best possible recovery for the Class. Securities cases are well known to be complex and recovery is far from certain due to the heightened pleading standards, which has resulted in a significant dismissal rate. *See, e.g.*, Settlement Memorandum, Ex. A (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, NERA Economic Consulting (Jan. 25, 2022)) at 14, Fig. 14 (noting that for federal securities class actions filed and resolved between January 2012 and December 2021, where a decision was entered on a motion to dismiss, 56% were granted).

This case required a determined investigation and the skill to respond to a host of legal and factual defenses raised by Defendants in connection with both their motion to dismiss and Lead Plaintiff's class certification motion. During the course of the Litigation, Lead Counsel spent over 8,560 hours of attorney and paraprofessional time investigating the claims, drafting the detailed Complaint, preparing an extensive brief in opposition to Defendants' motion to dismiss (which was denied in full), conducting substantial discovery (including obtaining and analyzing more than two million pages of documents), preparing a thorough brief in support of class certification, defending Lead Plaintiff's expert's deposition and the Rule 30(b)(6) depositions of Lead Plaintiff, and preparing for and participating in two mediation sessions that included the exchange of mediation statements regarding the parties' respective positions on the claims and defenses, and damages. *See*

---

at 561-67. Thus, that case is distinguishable from the facts here and does not overrule or undercut the rationale of the fee awards in the cases cited herein.

4853-3716-1791.v1

accompanying Declaration of James E. Barz in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Barz Decl."), ¶¶5(a)-(j), 10. During settlement negotiations, Lead Counsel demonstrated its willingness to continue to litigate the claims rather than accept a settlement that was not in the best interest of the Class. Notably, the case did not settle at the first or second mediation, but rather Lead Counsel pressed forward with the litigation and negotiations.

Moreover, given the stakes involved, it can be difficult to settle these cases prior to defendants exhausting all their legal challenges through summary judgment. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (securities action prosecuted by Robbins Geller that was filed in 2002, resulted in jury verdict for plaintiffs in 2009, remanded after appeal and settled in 2016). Not only was Lead Counsel, based on its reputation and willingness to litigate the case as long as necessary, able to secure a (relatively) prompt resolution less than three years after the case was filed, but it was also able to obtain a very good result. The result for the Class is also impressive as a percentage of recoverable damages. *See* Settlement Memorandum, §IV.A.3.b.

This result is all the more impressive given Lead Counsel was opposed in this Litigation by counsel from Kirkland & Ellis LLP, which has a reputation for being a leading defense firm in complex civil cases. In the face of this formidable opposition, Lead Counsel developed its case so as to persuade Defendants to settle the Litigation on terms favorable to the Class. Lead Counsel's skill, expertise, and excellent advocacy in representing the Class is reflected in this favorable result.

### 3. The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent Nature of the Representation

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic

4853-3716-1791.v1

counsel." *Silverman*, 739 F.3d at 958.[6] Lead Counsel undertook this Litigation on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave them uncompensated. Unlike counsel for defendants, who are paid an hourly rate and paid for their expenses on a regular (*e.g.*, monthly) basis, regardless of whether they win or lose, Lead Counsel had no such guarantee of payment, had to wait for any payment while the case was prosecuted for several years, and had to incur unpaid expenses while the case was ongoing. While the outcome here was favorable, there was no guarantee it would be at the time counsel agreed to take the case.

Lead Counsel had to build this case from its investigation without the benefit of any SEC or other government investigation, findings, or settlements. Even though Lead Plaintiff successfully opposed Defendants' motion to dismiss, Lead Plaintiff still faced significant obstacles. Assuming Lead Plaintiff was successful in certifying a class and able to overcome Defendants' motion for summary judgment after costly, additional discovery efforts, it still would have faced risks in proving falsity, materiality, scienter, and loss causation before a jury. *See* Settlement Memorandum §IV.A.3. Moreover, even apart from proving liability, proving damages in securities cases is complex and requires expert testimony to establish the amount – and indeed the existence – of actual damages. *See id.* Here, the damages assessments of the parties' respective experts would be heavily disputed (*see* ECF 82 at 21; Settlement Memorandum, §IV.A.3.b) and the determination of the amount, if any, of damages suffered by the Class at trial would have turned into a "battle of the experts."

There are numerous examples where plaintiffs' counsel in contingent cases such as this, after the expenditure of significant time and expenses, have received no compensation. Securities cases

---

[6] *See also Schulte*, 805 F. Supp. 2d at 598 ("All contingent fee class action cases involve some degree of risk for plaintiffs' counsel."); *Taubenfeld*, 415 F.3d at 600 (stating courts should consider "the contingent nature of the case" and the fact "that lead counsel was taking on a significant degree of risk of nonpayment"); *Hospira*, 2014 WL 12767763, at *1 ("the contingent nature of the Action favors a fee award of 30%").

4853-3716-1791.v1

have been dismissed at the pleading stage, dismissed on summary judgment, lost at trial, and even reversed after plaintiffs prevailed at trial, as the law is complex and continually evolving. *See, e.g.*, *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants after lengthy trial); *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (claims based on purchases on foreign exchanges eliminated by the "new 'transactional' rule" enunciated by the Supreme Court).[7] Quite simply, "Defendants prevail outright in many securities suits." *Silverman*, 739 F.3d at 958.

Because the fee in this matter was entirely contingent, the only certainty was that Lead Counsel would have to commit to years of work without pay, knowing that there would be no fee without a successful result and that such a result would be realized only after considerable effort and expense. Notably, the case did not settle during the two mediation sessions, as Lead Counsel committed its time and money to the vigorous and successful prosecution of the Litigation for the benefit of the Class. The contingent nature of counsel's representation strongly favors approval of the requested fee. *See, e.g.*, *Sutton*, 504 F.3d at 694 (reversing district court's reduced fee award and stating "[b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

### 4. The Stakes of the Litigation Favor a 30% Fee Award

The Court should also consider the "stakes of the case" in assessing a reasonable attorneys' fee. *Synthroid*, 264 F.3d at 721. As in other commercial class actions, the stakes here were high "given the size of the Class, the scale of the challenged activity, the complexity and costs of the legal

---

[7]    In fact, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005); *see also, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversal of jury verdict of $81 million).

proceedings, and the amount of money involved." *Schulte*, 805 F. Supp. 2d at 598. In this high stakes litigation, Lead Counsel successfully obtained a favorable recovery even before the completion of fact discovery. A settlement now is more beneficial to the Class than waiting several more years to obtain a recovery, not only because of the time value of money but also because the increased expenses of continued litigation could have reduced the amount of any available insurance to fund a recovery to the Class. As the litigation advances, the risks can also increase. And, even if Lead Plaintiff prevailed at trial, Defendants would have the opportunity to appeal any judgment obtained, possibly delaying a favorable resolution for years. *See supra*, §II.B.2-3. Lead Counsel undertook this case fully prepared to litigate against these obstacles.

### 5. The Reaction of the Class Supports the Requested Award

Pursuant to this Court's October 14, 2022 Preliminary Approval Order (ECF 99), more than 70,600 copies of the Notice have been mailed to potential Class Members and nominees. Class Members were informed in the Notice that Lead Counsel would apply for attorneys' fees not to exceed 30% of the Settlement Amount, plus expenses in an amount not to exceed $265,000, plus interest earned on both amounts. Class Members were also advised of their right to object to Lead Counsel's fee and expense request and the procedure for doing so. While the deadline to file objections – December 22, 2022 – has not yet passed, to date, no objection to any aspect of the Settlement, including the fee and expense request, has been received. Lead Counsel will address any objections received in its reply brief to be filed on January 5, 2023.

### 6. Lead Plaintiff Approved the 30% Fee Request

Lead Plaintiff, who worked with counsel throughout the Litigation, has approved the 30% fee request. *See* Albritton Decl., ¶8; Nye Decl., ¶8. Unlike consumer and other class action cases where lead plaintiffs may have little or no stake in the litigation, securities fraud cases have unique procedures for appointing as lead plaintiff the movant with the largest financial interest, which serve

- 12 -

to protect class members. *See Silverman*, 739 F.3d at 959 (stating it is "a premise of several rules in the Private Securities Litigation Reform Act" that investors with a large stake in the settlement fund, in "looking out for themselves, help to protect the interests of class members with smaller stakes"); 15 U.S.C. §78u-4(a)(3)(B). Moreover, the Class consists of many sophisticated Class Members who have counsel and incentive to object to the fee award, and the Seventh Circuit has also considered the absence of objection from such class members as supporting the reasonableness of a fee award. *See Silverman*, 739 F.3d at 959 (affirming fee award in securities class action and noting lack of objection by "institutional investors [that] have in-house counsel with fiduciary duties to protect the beneficiaries" and high fee awards could be "worth a complaint to the district judge if the lawyers' cut seems too high"). That Lead Plaintiff, two sophisticated institutional investors, approved the fee request also weighs in favor of its reasonableness. *See Groupon*, 2022 WL 17256417, at *2 ("The fee sought by Lead Counsel has been reviewed and approved as reasonable by the Lead Plaintiff, who oversaw the prosecution and resolution of the Action.").

Accordingly, all of the factors discussed above support the fee award requested by Lead Counsel, and the Court should grant counsel's application.

## III. LEAD COUNSEL'S EXPENSES ARE REASONABLE

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are entitled to payment of reasonable litigation expenses from the fund. *Synthroid*, 264 F.3d at 722; *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

Lead Counsel is requesting payment of expenses in the amount of $228,889.82. As set forth in the accompanying Declaration, these expenses were reasonably incurred in the prosecution of this Litigation and are adequately described. *See* Declaration of James E. Barz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶¶6, 7; *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17,

- 13 -

2015) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation.").[8]  Thus, Lead Counsel respectfully requests payment of these reasonable litigation expenses from the Settlement Fund.

## IV.  AWARDS TO LEAD PLAINTIFF PURSUANT TO THE PSLRA

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but it also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class."  15 U.S.C. §78u-4(a)(4).  Pursuant to these provisions, courts in this District have granted awards, for example, reflecting time spent on the litigation based on customary rates.  *See, e.g.*, *City of Sterling Heights Gen. Emps.' Ret. Sys. v.*

---

[8]  Note that judges in this District have split on whether electronic legal research expenses should be awarded or should be considered part of the attorneys' fee award. *Compare Silverman*, 2012 WL 1597388, at *4 (declining to approve legal research expenses) *with George v. Kraft Foods Global, Inc.*, 2012 WL 13089487, at *4 (N.D. Ill. June 26, 2012) (allowing recovery of such expenses).  While initially such costs were considered to be absorbed by rate increases for attorney time in the transition from paper to electronic legal research, more recently cases appear to have continued to approve electronic legal research expenses as an additional expense passed on to clients in the marketplace. *See Wong v. Accretive Health, Inc.*, No. 1:12-cv-03102, Transcript of Proceedings, ECF 85 at 4-5 (N.D. Ill. Apr. 30, 2014) (discussing split); *Accretive*, 2014 WL 7717579 (awarding legal research expenses); *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*, No. 1:12-cv-03297, ECF 116 at 14-15 (N.D. Ill. June 17, 2015) (memorandum discussing split); *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*, No. 1:12-cv-03297, slip op. at ¶4 (N.D. Ill. July 22, 2015) (Alonso, J.) (awarding legal research expenses); *Camping World*, No. 1:18-cv-07030, ECF 140 at 13 n.7 (N.D. Ill. July 1, 2020) (memorandum noting split); *Camping World*, slip op. at ¶4 (awarding expenses).  But *see Stericycle*, slip op. at 4 (declining to approve legal research expenses).  This Court has recently approved reimbursement of expenses that included amounts for "Online Research." *See, e.g.*, *Groupon*, No. 1:20-cv-02581, ECF 121, ¶107 (N.D. Ill. Sept. 8, 2022) (counsel including "Online Research" in categories of expenses); *Groupon*, 2022 WL 17256417, at *1 (awarding reimbursement of counsel's expenses).  Allowing recovery of these expenses separate from the fee award is consistent with the Seventh Circuit's directive that fee awards should mimic the market. *See, e.g.*, *Cont'l Ill.*, 962 F.2d at 570 ("[T]he paying, arms' length market reimburses lawyers' LEXIS and WESTLAW expenses.").  In this case, legal research expenses amount to $26,449.37 of the total $228,889.82 in expenses for which an award is being sought.

- 14 -

4853-3716-1791.v1

*Hospira, Inc.*, 2014 WL 4950173 (N.D. Ill. July 8, 2014) (requesting award for estimated employee time and customary rate); *Hospira*, 2014 WL 12767763, at *1 (St. Eve., J.) (awarding more than $25,000 to four institutional representatives). Also pursuant to these provisions, courts in this District have granted awards reflecting time spent on the litigation that could have been spent on other matters without consideration of an hourly rate or the exact time spent. *See, e.g.*, *Groupon*, No. 1:20-cv-02581, ECF 121, ¶107 (N.D. Ill. Sept. 8, 2022) (requesting lead plaintiff award where individual lead plaintiff "contributed time for the benefit of the Settlement Class"); *Groupon*, 2022 WL 17256417, at *2 (awarding $5,000 to lead plaintiff); *In re Akorn, Inc. Sec. Litig.*, No. 1:15-cv-01944, ECF 174-5, ¶7 (N.D. Ill. Feb. 19, 2018) (requesting award under 15 U.S.C. §78u-4(a)(4) for time devoted to the "representation of the Settlement Class" that could have otherwise been dedicated to tennis instructor business); *In re Akorn, Inc. Sec. Litig.*, 2018 WL 2688877, at *4-*5 (N.D. Ill. June 5, 2018) (Feinerman, J.) (awarding $10,000 each to three individual class representatives, $30,000 total).

Here, the Lead Plaintiff Pension Funds have submitted accompanying declarations seeking awards of $1,000 each for the time they dedicated to pursuing the claims. *See* Albritton Decl., ¶9; Nye Decl., ¶9. The requests of $2,000, combined, are well below the $10,000 maximum combined award amount set forth in the Notice, well below the amounts awarded in other cases in this District, and there has been no objection to date.

## V.     CONCLUSION

For all the reasons stated herein, and in the accompanying Settlement Memorandum and declarations, Lead Counsel submits that the Court should approve the fee and expense application. Lead Counsel also submits that Lead Plaintiff's request for awards of $1,000 each for Retirement System and Police & Fire, are reasonable and should be awarded pursuant to 15 U.S.C. §78u-4(a)(4).

- 15 -

4853-3716-1791.v1

DATED: December 8, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)

*s/ James E. Barz*

JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT J. ROBBINS
BAILIE L. HEIKKINEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
bheikkinen@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
BRIAN E. COCHRAN (IL Bar # 6329016)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com
bcochran@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 16 -

4853-3716-1791.v1

ASHERKELLY
CYNTHIA J. BILLINGS-DUNN
MATTHEW HENZI
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
248/747-2809 (fax)
cbdunn@asherkellylaw.com
mhenzi@asherkellylaw.com

Additional Counsel for Lead Plaintiff

- 17 -

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 8, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/James E. Barz*
JAMES E. BARZ

ROBBINS GELLER RUDMAN
     & DOWD LLP
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)

Email: JBarz@rgrdlaw.com

# Mailing Information for a Case 1:19-cv-07665 Azar v. Grubhub Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Stefan Howard Atkinson**
  stefan.atkinson@kirkland.com

- **James E Barz**
  jbarz@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian E. Cochran**
  BCochran@rgrdlaw.com,e_file_sd@rgrdlaw.com,kjohnson@rgrdlaw.com,bengfelt@rgrdlaw.com

- **Sandra C Goldstein**
  sandra.goldstein@kirkland.com,sandra-goldstein-3843@ecf.pacerpro.com,kenymanagingclerk@kirkland.com,michelle.denny@kirkland.com

- **John F. Hartmann**
  jhartmann@kirkland.com,meghan.guzaitis@kirkland.com

- **Bailie Heikkinen**
  bheikkinen@rgrdlaw.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Madelyn A. Morris**
  madelyn.morris@kirkland.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com

- **Mary T Reale**
  mary.reale@kirkland.com

- **Matthew Alexander Richard**
  mrichard@rgrdlaw.com,evanyi@rgrdlaw.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com,E_File_SD@rgrdlaw.com,schateauneuf@rgrdlaw.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com,khanson@rgrdlaw.com

- **Mason Glen Roth**
  mroth@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing

Case: 1:19-cv-07665 Document #: 106 Filed: 12/08/22 Page 25 of 25 PageID #:2177

program in order to create notices or labels for these recipients.

- (No manual recipients)