UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| ROEI AZAR, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 1:19-cv-07665 |
| Plaintiff, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) ) | Judge Matthew F. Kennelly<br>Magistrate Judge Jeffrey Cole |
| GRUBHUB INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

DECLARATION OF JAMES E. BARZ IN SUPPORT OF: (1) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION; AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)

4878-8330-5282.v1

I, James E. Barz, declare as follows:

1.      I am a partner of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller").  Robbins Geller serves as Court-approved Lead Counsel for the Court-appointed Lead Plaintiff City of Pontiac Reestablished General Employees' Retirement System and City of Pontiac Police & Fire Retirement System.[1]  I have been actively involved in prosecuting and resolving the Litigation, am familiar with its proceedings, and have knowledge of the matters set forth herein based upon my participation in this Litigation and my supervision of, or communications with, other lawyers and staff assigned to this matter.  This declaration was prepared with the assistance of other lawyers at Robbins Geller, reviewed by me before signing, and the information contained herein is believed to be accurate based on what I know and what I have been told by others.

2.      I submit this declaration in support of: (1) Lead Plaintiff's motion for approval of the $42,000,000 all-cash Settlement and the proposed Plan of Allocation; and (2) Lead Counsel's motion for an award of attorneys' fees and expenses.  Both motions have the support of Lead Plaintiff, as set forth in the concurrently filed declarations.

## I.      THE SETTLEMENT

3.      The relevant facts and allegations are set forth in Lead Plaintiff's: (i) Complaint for Violations of the Federal Securities Laws (ECF 36) (the "Complaint"); (ii) concurrently filed Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"); and (iii) concurrently filed Memorandum of Points and Authorities in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum").

---

[1]      Capitalized terms used herein that are not otherwise defined shall have the meanings as provided in the Stipulation of Settlement dated October 7, 2022 (ECF 94) (the "Stipulation").

4878-8330-5282.v1

4.      Securities class actions are complex and challenging cases and, given the stakes involved, result in defendants hiring some of the largest law firms and vigorously disputing liability and damages.  This case was no exception.  The legal risks to continued litigation are discussed in the Settlement Memorandum and Fee Memorandum and include Defendants' arguments that: (i) Lead Plaintiff could not establish that Defendants' Class Period statements were false and misleading when made; (ii) certain alleged Class Period statements were immaterial puffery; (iii) Lead Plaintiff could not establish that Defendants acted with the requisite scienter; and (iv) Lead Plaintiff could not establish loss causation or damages.

5.      Prior to the Settling Parties ultimately reaching agreement on September 13, 2022, Lead Counsel and Lead Plaintiff had engaged in substantial litigation and negotiations that allowed them to be informed about the benefits of settlement and risks of ongoing litigation.  For example:

(a)      Lead Counsel conducted a comprehensive investigation into the facts, circumstances, and potential claims and defenses that included analysis of SEC filings, media and analyst reports, press releases, shareholder communications, relevant case law and authorities, and other publicly-available information;

(b)      Lead Counsel used the materials obtained from its investigation to prepare the detailed, 159-paragraph Complaint, then prepared an extensive brief in opposition to Defendants' motion to dismiss the Complaint, which the Court denied in full, allowing the claims to proceed;

(c)      Lead Counsel drafted and then met and conferred regarding document requests and subpoenas that it served on all Defendants and more than 30 non-parties and, as a result, obtained and analyzed more than 275,000 documents, exceeding two million pages;

(d)      Lead Counsel issued and secured responses to interrogatories and dozens of requests for admission served on each Defendant;

4878-8330-5282.v1

(e)      Each Lead Plaintiff, working with Lead Counsel, responded to interrogatories, produced documents, submitted affidavits in support of class certification, and prepared for and sat for a deposition;

(f)      Lead Counsel retained market efficiency and damages expert Chad W. Coffman (CFA), the President of Global Economics Group, who provided an expert market efficiency declaration that Lead Plaintiff submitted in support of its motion for class certification, which had been briefed by each side;[2]

(g)      Lead Counsel assisted in the preparation for and defended the deposition of Mr. Coffman and two Lead Plaintiff representatives, and Lead Counsel attended two depositions noticed by Defendants of Lead Plaintiff's investment advisors;

(h)      Lead Counsel prepared for mediation, including by consulting with Mr. Coffman on potential damages and Defendants' arguments concerning loss causation and damages, and the parties exchanged mediation briefs that detailed specific evidence and legal arguments each side would rely upon as the case progressed;

(i)      On April 6, 2022, Lead Counsel participated in (and Lead Plaintiff received updates regarding) an all-day mediation before the mediator, Robert Meyer, Esq. of JAMS, which ended without an agreement; and

(j)      Lead Counsel and Lead Plaintiff continued to engage in extensive settlement negotiations with Defendants over several months following the initial mediation, including an additional mediation session with Mr. Meyer on August 23, 2022, which ended without an agreement.

---

[2]      At the time the Settling Parties reached an agreement, Lead Plaintiff had filed its opening brief, Defendants had filed an opposition brief, and Lead Plaintiff was preparing its reply.

4878-8330-5282.v1

6.      The litigation and settlement negotiations were hard-fought, as reflected by the motion to dismiss briefing, class certification briefing, failed mediation before an experienced mediator, and continued litigation and settlement negotiations for several months thereafter.  The Settlement was reached only after a second mediation session ended without agreement, and Mr. Meyer thereafter issued a mediator's proposal to settle the action for $42,000,000.

7.      The $42 million all-cash Settlement confers a substantial benefit to the Class.  From its analysis, Lead Counsel determined that there were significant risks to continuing the litigation. For example, Defendants have maintained that any negative trends that Lead Plaintiff alleges should have been disclosed did not arise until after alleged false and misleading statements were made, which would undermine Lead Plaintiff's ability to establish the elements of falsity and scienter. Additionally, as set forth in the Settlement Memorandum (at §IV.A.3.b.), damages in securities class actions are, and in this case in particular would be, hotly contested throughout expert discovery and at trial, and Lead Plaintiff and Lead Counsel have secured  a favorable result for the Class under the facts of this case.

8.      In addition, Defendants provided to Lead Plaintiff information about potentially available insurance coverage, which information was taken into account during the parties' extensive, arm's-length negotiations undertaken by experienced negotiators and supervised by a mediator and is reflected in the Settlement Amount agreed upon between the parties.  Had the case continued in litigation for several years, as many securities class actions do, the expenses of litigation would have reduced any available insurance to fund a recovery as the parties proceeded to expert discovery, summary judgment, trial, and any appeals, while exposing the Class to risks of losing or narrowing the paths to recovery.

9.      Lead Counsel expended substantial time and effort to achieve the $42 million all-cash Settlement in this case which attempts to maximize the amount of the settlement without the costs,

- 4 -

4878-8330-5282.v1

expense, and risks of continued litigation. Lead Plaintiff and Lead Counsel could have settled the Litigation even earlier in the case at a substantially lower amount, but instead litigated the case through a motion to dismiss, two mediations, contested document and written discovery, and class certification briefing. In contrast, continuing to litigate would not guarantee a larger recovery for the Class but would only guarantee further delay in any recovery and the continued risk of a smaller or no recovery.

10. As set forth herein and more fully in the Settlement Memorandum, the Settlement was reached after more than two years of litigation, briefing, and negotiations; the Settlement was the result of an arm's-length settlement process between experienced parties and counsel, overseen by Mr. Meyer who has substantial experience conducting mediations; and the Settlement was reached only after Lead Plaintiff and Lead Counsel achieved a substantial litigation victory early in the case, analyzed more than two million pages of documents to identify key "hot" and "critical" documents that would likely represent main exhibits at trial, prepared and filed Lead Plaintiff's motion for and brief in support of class certification, and consulted with Lead Counsel's damages expert.

11. The Settlement provides immediate recovery without the risks, uncertainties, and delay of continued litigation. Based on its experience in securities class action and in this case, and for the reasons set forth in the Settlement Memorandum, Lead Counsel believes that the Settlement is fair, reasonable, and in the best interest of the Class.

## II.     THE PLAN OF ALLOCATION

12. Upon approval by the Court, the Plan of Allocation governs the method by which the Net Settlement Fund will be distributed on a *pro rata* basis to Class Members who submit valid, timely Proof of Claim and Release forms. The proposed Plan of Allocation is set forth in the Notice.

- 5 -

4878-8330-5282.v1

13.     The proposed Plan of Allocation was developed in consultation with Robbins Geller's damages expert, Mr. Coffman. It reflects the statutory scheme and damages theory for the claims alleged, and it is similar to plans of allocation used in other settlements resolving Securities Exchange Act of 1934 claims.

14.     Thus, the Plan of Allocation is designed to fairly and reasonably allocate the Net Settlement Fund among eligible Class Members. For the reasons set forth in the Settlement Memorandum, Lead Counsel respectfully submits that the Plan of Allocation is fair and reasonable and should be approved.

## III.     THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

15.     Lead Counsel respectfully requests that the Court award 30% of the $42,000,000 Settlement Amount for attorneys' fees. For the reasons set forth in the Fee Memorandum, Lead Counsel believes such a fee is reasonable and appropriate. Lead Counsel further requests an award of $228,889.82 in litigation expenses and charges in connection with the prosecution of this Litigation. Arguments and authorities supporting the requested fees and expenses are set forth in more detail in the Fee Memorandum.

16.     Lead Counsel's time and resources in the research, investigation, and prosecution of this Litigation are set forth in the Declaration of James E. Barz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), submitted herewith. Included in that declaration is a summary of the time and expenses incurred by Lead Counsel in this Litigation.

17.     As set forth in the Fee Memorandum, Lead Counsel worked diligently to obtain a favorable result for the Class. The recovery obtained for the Class is the direct result of the significant efforts of attorneys who possess substantial experience in the prosecution of complex securities class actions. *See* www.rgrdlaw.com.

- 6 -

18.     On the other side, Defendants were represented by experienced lawyers from a large and well-known defense firm, Kirkland & Ellis LLP.  The ability of Lead Counsel to obtain the Settlement in the face of such opposition confirms the quality of Lead Counsel's representation.

19.     From the outset, Lead Counsel understood that its attorneys and paraprofessionals would have to devote a significant amount of time and effort to the prosecution of this case.  The time spent by Lead Counsel on this case was at the expense of the time that it could have devoted to other matters.  Lead Counsel undertook this case solely on a contingent fee basis, assuming a risk that the case would yield no recovery and leave Lead Counsel uncompensated.  The only way Lead Counsel would be compensated was to achieve a successful result.

20.     Unlike counsel for defendants, who are generally paid an hourly rate and paid for their time and expenses on a monthly or other regular basis, Lead Counsel has not been compensated for any time or expenses since this case was initiated.  Instead, when working on a contingent fee basis, Lead Counsel must wait until the very end of the litigation, which typically takes many years, to secure payment for its efforts, if at all.  To date, Lead Counsel has not been compensated for any of the work detailed herein.

21.     Lead Counsel's substantial experience and advocacy was required in presenting the strengths of this case in pleadings, briefing, and at the mediations in an effort to achieve a favorable settlement and convince Defendants, their insurers, defense counsel, and the mediator of the risks Defendants faced from not settling and proceeding to trial.  To that end, Lead Counsel assembled an experienced litigation team, as set forth in the firm's resume.

22.     The undersigned was the lead trial attorney assigned to this matter from Robbins Geller and is an experienced trial attorney, former Assistant United States Attorney, registered CPA, and adjunct professor of law at Northwestern University Pritzker School of Law for over ten years (teaching courses on trial advocacy and class action litigation), and has previously been a partner in

- 7 -

4878-8330-5282.v1

one of the largest national defense firms that, among other things, defended securities class action cases. Since joining Robbins Geller in 2011, the undersigned has been lead trial counsel in several securities class actions that resulted in substantial and favorable recoveries, including those that proceeded to within days or weeks of trial prior to settling, and including a recent settlement for $1.21 billion that is reportedly the ninth largest securities class action settlement in history.

24. If the case had not settled, Lead Counsel was fully prepared to litigate this case through the complex stages of pre-trial litigation, trial, and appeal. Lead Counsel only recommended settlement after extensive efforts to obtain the best possible result for the Class.

24. For the reasons detailed in the Fee Memorandum, including the favorable recovery obtained, the complexity of the issues presented, the effort and skill exhibited by Lead Counsel, the contingent nature of Lead Counsel's representation, the fee awards in comparable class actions, and Lead Plaintiff's negotiation and endorsement of the requested fee, Lead Counsel believes the requested fee and litigation expense awards are reasonable and appropriate, particularly when considering the policy of incentivizing counsel to take on and diligently pursue meritorious securities class actions.

## IV. CONCLUSION

25. In view of the immediate, certain, and favorable recovery to the Class and the challenges presented by the claims against the Defendants and facts of this case, as described above and in the accompanying Settlement Memorandum, Lead Counsel submits that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should likewise be approved as fair, reasonable, and adequate. In view of the recovery achieved and the

4878-8330-5282.v1

- 9 -

quality of work performed, among other things, as described above and in the accompanying Fee Memorandum, Lead Counsel submits that the fee and expense application should be approved.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 8th day of December, 2022, at Chicago, Illinois.

*s/ James E. Barz*
JAMES E. BARZ

4878-8330-5282.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 8, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/James E. Barz*
JAMES E. BARZ

ROBBINS GELLER RUDMAN
   & DOWD LLP
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

Email:  JBarz@rgrdlaw.com

# Mailing Information for a Case 1:19-cv-07665 Azar v. Grubhub Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Stefan Howard Atkinson**
  stefan.atkinson@kirkland.com

- **James E Barz**
  jbarz@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian E. Cochran**
  BCochran@rgrdlaw.com,e_file_sd@rgrdlaw.com,kjohnson@rgrdlaw.com,bengfelt@rgrdlaw.com

- **Sandra C Goldstein**
  sandra.goldstein@kirkland.com,sandra-goldstein-3843@ecf.pacerpro.com,kenymanagingclerk@kirkland.com,michelle.denny@kirkland.com

- **John F. Hartmann**
  jhartmann@kirkland.com,meghan.guzaitis@kirkland.com

- **Bailie Heikkinen**
  bheikkinen@rgrdlaw.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Madelyn A. Morris**
  madelyn.morris@kirkland.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com

- **Mary T Reale**
  mary.reale@kirkland.com

- **Matthew Alexander Richard**
  mrichard@rgrdlaw.com,evanyi@rgrdlaw.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com,E_File_SD@rgrdlaw.com,schateauneuf@rgrdlaw.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com,khanson@rgrdlaw.com

- **Mason Glen Roth**
  mroth@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing

Case: 1:19-cv-07665 Document #: 107 Filed: 12/08/22 Page 13 of 13 PageID #:2224

program in order to create notices or labels for these recipients.

- (No manual recipients)